Eduardo ALANIS-BUSTAMANTE, Petitioner-Appellant,

v.

Janet RENO, et al., Respondent-Appellee.

No. 98-3689.

United States Court of Appeals,

Eleventh Circuit.

Jan. 25, 2000.

Appeal from the United States District Court for the Middle District of Florida.(No. 98-01827-CIV-T-17C), Elizabeth A. Kovachevich, Judge.

Before TJOFLAT and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.

CARNES, Circuit Judge:

Eduardo Alanis-Bustamante contends that the Board of Immigration Appeals ("BIA") erroneously applied the 1996 amendments to the Immigration and Nationalization Act ("INA") to his removal proceeding, which rendered him ineligible for an INA § 212(c) waiver of deportation. After the BIA ordered Bustamante removed from the United States, he sought judicial review of his removal by filing a habeas corpus petition in the district court pursuant to 28 U.S.C. § 2241. The district court held that the Illegal Immigrant Removal and Immigrant Responsibility Act ("IIRIRA"), one of the 1996 legislative enactments that amended the INA, had removed habeas corpus jurisdiction over removal proceedings, and thus, it dismissed Bustamante's habeas petition for lack of subject matter jurisdiction. Bustamante has filed this appeal.

Bustamante's appeal turns on which set of legislative rules governs his case, and that boils down to the question of when the removal proceedings against him began—on the date the INS served him with an order to show cause after filing a warrant of detainer against him, or on the date the INS filed a notice to appear in the immigration court. For the reasons that follow, we hold that for purposes of determining the applicability of the 1996 amendments to the INA, removal proceedings against an alien have begun when the INS has served him with an order to show cause and has lodged a warrant of detainer against him.

Application of that holding to the facts of this case requires us to reverse the district court's dismissal of Bustamante's § 2241 habeas corpus petition.

## I. BACKGROUND

In 1969, Eduardo Alanis-Bustamante, a citizen of Mexico, lawfully entered the United States with his parents. Since that time, he has resided in this country as a permanent resident. In 1994, Bustamante was convicted in the U.S. District Court for the Southern District of Texas of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was sentenced to thirty-three (33) months imprisonment and four years probation.

On June 28, 1995, while Bustamante was still incarcerated for his drug conviction, the INS served him with an order to show cause. Shortly before then, the INS also issued a warrant of detainer notifying prison authorities that Bustamante was to be turned over to the INS after the period of his incarceration ended. The show cause order itself informed Bustamante that the INS intended to initiate removal[1] proceedings against him and indicated that he was removable pursuant to INA § 241(a)(2)(A)(iii),[2] which authorizes removal of an alien convicted of an aggravated felony, and § 241(a)(2)(B)(i),[3] which authorizes removal of an alien convicted of a controlled substance crime. The INS, however, did not file the show cause order with the immigration court, which is a prerequisite to the formal commencement of removal proceedings. *See* 8 C.F.R. § 3.14 (1999).

During the next two years Bustamante remained incarcerated serving his sentence. Meanwhile, Congress passed two pieces of legislation that significantly amended the INA: the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), enacted on April 24,

---

[1]Under current law, deportation proceedings are referred to as "removal" proceedings. *See* 8 U.S.C. § 1229a.

[2]8 U.S.C. § 1251(a)(2)(A)(iii), currently codified at 8 U.S.C. § 1227(a)(2)(A)(iii).

[3]8 U.S.C. § 1251(a)(2)(B)(i), currently codified at 8 U.S.C. § 1227(a)(2)(B)(i).

1996; and the Illegal Immigrant Removal and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104-208, Div. C., 110 Stat. 3009-546, enacted on September 30, 1996. After both of those pieces of legislation were enacted, and shortly before Bustamante finished serving his sentence,[4] the INS issued a notice to appear and filed that notice with the immigration court. That issuance and filing occurred on June 20, 1997.[5] Bustamante was eventually released on bond pending the removal hearing, which occurred on September 5, 1997.

At the removal hearing, Bustamante appeared with counsel before an immigration judge. He admitted the allegations set out in the notice to appear—and originally in the order to show cause—and conceded that he was removable. But, he also requested a waiver of deportation pursuant to § 212(c) of the pre-amendment INA. The immigration judge concluded, however, that under the new IIRIRA provisions, Bustamante's status as an aggravated felon rendered him ineligible for a "cancellation of removal," which is the IIRIRA equivalent of the pre-amendment INA § 212(c) waiver of deportation.[6] Bustamante appealed the

---

[4]While the record does not indicate the exact date that Bustamante was released from incarceration for his narcotics conviction, a report from the prison authorities indicates that July 12, 1997 was the earliest possible date of his release.

[5]IIRIRA replaced the "order to show cause" with the "notice to appear" as the charging document for removal proceedings. The documents serve the same purpose of notifying an alien of the commencement of removal proceedings and the grounds for the removal. *See* 8 U.S.C. § 1229b; 8 C.F.R. § 3.13 (1999).

  While the exact date is unclear from the record, the INS apparently served Bustamante with the notice to appear on July 20, 1997, one month after it issued and filed the notice. Regardless, the exact date on which the INS served the notice is irrelevant to the determination of this case.

[6]Under pre-amendment INA § 212(c), the Attorney General, or one of her representatives, could waive the deportation of an admittedly deportable alien based upon various equitable considerations. *See* 8 U.S.C. § 1182(c) (1995) (repealed) (requiring that the alien be a lawful permanent resident and have domiciled in the United States for seven continuous years to be eligible for a discretionary waiver). Before AEDPA and IIRIRA, an aggravated felony conviction rendered an lawful permanent resident alien ineligible for a discretionary waiver of deportation only when the alien had served five or more years in prison for the aggravated felony. *See id.* AEDPA § 440(d), which was codified at 8 U.S.C. § 1182(c) (1997) (repealed), greatly expanded the types of criminal convictions that rendered an alien ineligible for a waiver. *See Mayers v. United States Dept. of INS,* 175 F.3d 1289, 1292-93 (11th Cir.1999). IIRIRA repealed 8 U.S.C. § 1182(c) in its entirety and replaced it with IIRIRA § 304(a), which prohibits "cancellation of removal" relief for an alien convicted of *any* aggravated felony. *See id.* n. 3; 8 U.S.C. § 1229b(a)(3); *see also* 8 U.S.C. §

3

immigration judge's decision, but on August 3, 1998, the BIA denied his appeal. The BIA concluded, as the immigration judge had, that the new provisions of IIRIRA applied to Bustamante's proceeding, making him ineligible for a cancellation of removal (or a waiver of deportation, as it used to be called). Accordingly, the BIA upheld the order removing Bustamante from the United States without further adieu.

Bustamante then filed in the district court a habeas corpus petition seeking relief pursuant to 28 U.S.C. § 2241 and contending primarily that the BIA had erred in concluding that he was ineligible for an INA § 212(c) waiver of deportation. The district court did not reach this claim, however, because it held that IIRIRA had stripped district courts of habeas jurisdiction on all matters related to removal proceedings. The district court reasoned that new INA § 242(g) channels all judicial review of a removal through direct review in the court of appeals. Accordingly, the district court dismissed Bustamante's habeas petition for lack of subject matter jurisdiction. Bustamante now appeals the district court's dismissal of his 28 U.S.C. § 2241 habeas corpus petition.

We review *de novo* the district court's dismissal of Bustamante's § 2241 habeas petition for lack of subject matter jurisdiction. *See Babicz v. School Bd. of Broward County,* 135 F.3d 1420, 1421 (11th Cir.1998).

## II. DISCUSSION

The 1996 enactments of AEDPA and IIRIRA substantially amended—and complicated—the INA, particularly the provisions relating to the availability of judicial review. Fortunately, recent ventures by this Court into the labyrinthian INA, as amended by AEDPA and IIRIRA, shorten our present journey and illuminate the dispositive issue in this case: whether Bustamante's removal proceedings commenced on June 28, 1995, when the INS served him with the order to show cause after having filed a warrant of detainer

1101(a)(43) (listing crimes constituting aggravated felonies).

Bustamante appears to meet all of the requirements for consideration of a pre-amendment INA § 212(c) waiver, *see* 8 U.S.C. § 1182(c) (1995) (repealed), and the INS does not dispute that, prior to the 1996 amendments, Bustamante would have been eligible to be considered for a waiver of deportation.

4

against him; or on June 20, 1997, when the INS filed the notice for him to appear in the immigration court. This issue is dispositive because the date on which the INS commenced the removal proceedings against Bustamante determines which provisions of the INA apply to his case, and thus, whether habeas review of his removal order is available.

In prescribing which provisions of the INA, as amended, apply in a removal case, Congress divided removal cases into these three categories:

(1) Proceedings that culminated in a final order before October 31, 1996 are governed by AEDPA § 440(a);[7]

(2) Proceedings that culminated in a final order after October 31, 1996, but that commenced before April 1, 1997 (the effective date of IIRIRA) are governed by the INA as amended by the special transitional rules of IIRIRA;

(3) Proceedings that commenced after April 1, 1997 are governed by the provisions of the INA as permanently amended by IIRIRA.

See Mayers, 175 F.3d at 1293 n. 4; Lettman v. Reno, 168 F.3d 463, 464, vacated in part, 185 F.3d 1216 (11th Cir.1999).

If the present case commenced with the filing of the notice to appear on June 20, 1997—about two months after the April 1 effective date of IIRIRA—it is governed by the permanent provisions of INA as amended by IIRIRA. In Richardson v. Reno, 180 F.3d 1311 (11th Cir.1999), we held that, under the permanent provisions of IIRIRA, § 2241 habeas jurisdiction over removal cases no longer exists.[8] In reaching

---

[7]The present case does not fall within this category. The BIA did not reject his appeal until August 3, 1998.

[8]The Richardson case was before us twice, once initially and then again on remand from the Supreme Court. In Richardson I, 162 F.3d 1338 (11th Cir.1998), we held, as we would again in Richardson II, that the permanent provisions of IIRIRA precluded habeas review of a removal case. However, in Richardson I, we relied in part on the exclusive judicial review provision of § 242(g), which states that: "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against an alien under this chapter." 8 U.S.C. § 1252(g). We noted that § 242(g) appears to limit judicial review of any aspect of a removal to an appeal from a final removal order directly to a court of appeals, as provided in INA § 242(b). Richardson I, 162 F.3d at 1358. Thus, we concluded that Congress intended to close the habeas avenue for

that holding, we noted that INA § 242(b)(9)[9] specifically operates as a "zipper" clause, ensuring that review

of any aspect of a removal proceeding occurs only after a final removal order has been entered *and* only in

the appropriate court of appeals. *See id.* at 1315. Accordingly, under the permanent provisions of IIRIRA,

the only proper venue for Bustamante's challenge to his removal would be a direct appeal in this Court from

a final removal order, pursuant to INA § 242(b). Therefore, if the proceedings to remove Bustamante did not

commence until the June 20, 1997 notice to appear, the district court correctly concluded that it lacked

jurisdiction over Bustamante's habeas petition.

If, however, the proceedings to remove Bustamante commenced on June 28, 1995, at which time the

order to show cause was served on him and a warrant of detainer had been filed against him, then a different

set of rules apply and a different result is reached. A case with a June 1995 commencement date is governed

---

judicial review of removal cases. *See id.* at 1358-59.

> In *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court did not read INA § 242(g) as broadly as we had, instead holding that the limitation on judicial review applies only to challenges to a "decision or action" by the Attorney General to: (1) "commence [removal] proceedings," (2) "adjudicate cases," or (3) "execute removal orders." 119 S.Ct. at 937. The Supreme Court vacated our decision in *Richardson I* and remanded the case to us for reconsideration in light of its *American-Arab* decision. *See Richardson v. Reno,* --- U.S. ----, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999).

> On remand, we noted that Richardson's habeas claim—that he was wrongfully denied bond pending the final determination of his removal proceeding—did not fall within the three discrete categories of § 242(g). *See Richardson II,* 180 F.3d at 1313-14. However, we explained that, in *Richardson I,* we had not relied solely on INA § 242(g) but instead had relied on the overall scheme of § 242(b), as well as other significant revisions that had been made to the judicial review of removal cases. *See id.* at 1314-15 (noting, for example, that new INA § 242(e)(2) provides for habeas review in certain narrow circumstances, which indicates a congressional intent to preclude habeas review in all other circumstances) (citing *Richardson I,* 162 F.3d at 1357). Thus, in *Richardson II* we reaffirmed our holding in *Richardson I* that, under the permanent provisions of IIRIRA, an alien may not seek habeas review of any aspect of his removal. *See id.* 1315 (holding also that IIRIRA's foreclosure of habeas review does not violate the Suspension Clause).

[9]"Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section [§ 242]." 8 U.S.C. § 1252(b)(9).

by the special transitional rules of IIRIRA. In *Mayers v. United States Dept. of INS,* we held that § 2241 habeas review remains available for aliens whose proceedings are governed by the transitional rules of IIRIRA.[10] *See Mayers,* 175 F.3d at 1301. Addressing the substance of the aliens' habeas petitions in *Mayers,* we also held that AEDPA's § 440(d) ban on discretionary relief for aggravated felon aliens does not apply retroactively. *Id.* at 1304.[11]

Therefore, if the proceedings to remove Bustamante commenced on June 28, 1995, he would be eligible for consideration of a pre-amendment INA § 212(c) waiver of deportation, and 28 U.S.C. § 2241 would be available for him to secure judicial review of his denial of that consideration. We now turn to the

---

[10]Like Bustamante, the habeas petitioners in *Mayers* faced removal from the United States based on their convictions of aggravated felonies, and they applied for an INA § 212(c) discretionary waiver of deportation. In that case, the BIA had relied on the Attorney General's interpretation of AEDPA § 440(d), which makes aggravated felon aliens ineligible for discretionary relief from removal, and concluded that it applied to those aliens' removal proceedings, even though they had unquestionably been commenced before AEDPA's effective date. The aliens filed a § 2241 habeas petition, claiming that the Attorney General had improperly interpreted AEDPA § 440(d) to apply retroactively to pending removal cases. *See id.* at 1295.

Before addressing the retroactivity claim in *Mayers,* we first addressed whether habeas review was still available for aliens whose proceedings are governed by IIRIRA's transitional rules. Relying on the Supreme Court's decision in *American-Arab,* we explained that the exclusive judicial review provision of INA § 242(g) does not apply to review of final removal orders arising under the transitional rules. *See id.* at 1296-97 (discussing Supreme Court's conclusion that § 242(g) is intended to "eliminate review of certain interim, discretionary decisions the INS may make"). Noting further that the new provisions of IIRIRA, including those relating to judicial review, generally do not apply to removal cases that were pending before the enactment of IIRIRA, we found that none of the exceptions to this general rule applied to the proceedings in *Mayers. See id.* at 1297 (citing IIRIRA § 309(c)(1)). Finally, we concluded that AEDPA, enacted a few months before IIRIRA, did not abolish general § 2241 habeas corpus jurisdiction over removal proceedings. *See id.* at 1298-1300. Thus, in *Mayers* we held that an alien whose removal proceedings are governed by the transitional rules of IIRIRA, and who seeks review of a final removal order, may seek judicial review of his removal through a § 2241 habeas corpus petition. *See id.* at 1301.

[11]In *Mayers,* we concluded that Congress intended only prospective application of the discretionary relief ban, because other sections of AEDPA, but not § 440(d), expressly provided that they were to apply retroactively. *See Mayers,* 175 F.3d at 1302-03. One of the aliens, Mayers, had been granted an INA § 212(c) discretionary waiver of deportation by the BIA. However, the BIA rescinded the waiver after the Attorney General issued an opinion that the AEDPA § 440(d) ban on discretionary relief for aggravated felon aliens applied to cases pending when AEDPA was enacted. *Mayers,* 175 F.3d at 1295. Concluding that the § 440(d) ban did not apply retroactively, we instructed the district court to order that Mayers § 212(c) waiver be reinstated by the BIA. *Id.* at 1304.

pivotal issue of when removal proceedings against Bustamante commenced. It would seem that should be a simple issue with a clear answer, but this is immigration law where the issues are seldom simple and the answers are far from clear.

The government contends that removal proceedings did not commence until June 20, 1997, when the INS issued the notice to appear and filed it with the immigration court, pursuant to 8 U.S.C. § 1229 and 8 C.F.R. §§ 3.13, 3.14 (1999). It argues that a removal proceeding cannot officially "commence" until the "charging document"—in 1995 it was called an order to show cause—is *filed* in the appropriate immigration court. *See* 8 C.F.R. §§ 3.13, 3.14 (1999).[12] In 1995, the relevant regulation provided:

> Every proceeding to determine the deportability of an alien in the United States, except ... [in limited exceptions not relevant here] ... is *commenced by the filing of an order to show cause* with the Office of the Immigration Judge.

8 C.F.R. § 242.1 (1995) (repealed) (emphasis added).

While Bustamante was serving his sentence, the order to show cause which had been served on him was not filed with an immigration court, because the INS was awaiting the end of Bustamante's incarceration for his drug conviction. The government argues that because the show cause order was never filed, Bustamante's removal proceedings did not begin until the June 20, 1997 filing of the notice to appear.[13] Consequently, the government maintains, the permanent provisions of IIRIRA apply and our decision in *Richardson* precludes habeas review of Bustamante's removal. From Bustamante's perspective, however, he

---

[12]According to the government, the purpose of the regulation is to unify a deportation proceeding's date of commencement for the INS, which brings the deportation charges against an alien, and the Executive Office for Immigration Review ("EOIR"), which adjudicates those charges. *See* Resp. Second Supp. Br. at 2-3.

[13]This Court has noted, but only in passing, that the filing of an order to show cause officially commences a deportation proceeding. *See, e.g., San Pedro v. United States,* 79 F.3d 1065, 1070 (11th Cir.1996). Even if that were a holding and the law of the circuit, it would not resolve this case, because here the INS never filed the order to show cause to commence removal proceedings. This case is about an order to show cause that was served on the alien but never filed with the immigration court.

8

was subject to the authority of the INS and to possible removal as of June 28, 1995, at which time he had received the order to show cause and a warrant of detainer had been lodged against him.

The First Circuit, the only other circuit that has addressed the precise issue before us, concluded that the alien's perspective is the relevant one for determining when a proceeding commences for purposes of deciding which statutory rules apply. Like this Court in *Mayers,* the First Circuit in *Wallace v. Reno,* 194 F.3d 279 (1st Cir.1999), refused to apply retroactively AEDPA § 440(d). The government made an argument in *Wallace* similar to the one it makes here—it argued that even though an order to show cause had been served on Wallace before the effective date of AEDPA, the order was not filed until after AEDPA's enactment; thus, the removal proceeding did not "commence" until after AEDPA had become law. *See id.* at 287. The First Circuit rejected the government's argument, reasoning that:

> In this case, we are not concerned with INS's internal time tables, starting points, due dates, and the like but with the judicial question of retroactivity. This question turns on considerations unrelated to the purpose of INS regulations—primarily ... with the evil Congress sought to prevent and the realities of reasonable reliance or settled expectations on the part of litigants. From this standpoint, we think that when an order to show cause is served on the alien, the deportation process has effectively begun and expectations properly form, even if there is no actual reliance.

*Id.*[14]

We need not decide whether service of the order to show cause alone is enough, because in this case there is the added factor (not mentioned in the *Wallace* case) of a warrant of detainer which had been lodged against the alien at the time the show cause order was served. The combination of the two is enough to commence proceedings for purposes of determining the applicable law. To conclude otherwise not only risks undermining the reasonable expectations of an alien, it also ignores the INS' power over an alien once it issues an order to show cause. As soon as the INS issued the order to show cause, it had the authority to arrest

---

[14]It appears that a few district courts have reached the same conclusion as the First Circuit in *Wallace,* that a removal proceeding has effectively begun when an order to show cause is served upon the alien. *See Canela v. United States Dept. of Justice,* 64 F.Supp.2d 456, 458 (E.D.Pa.1999); *Dunbar v. INS,* 64 F.Supp.2d 47, 52 (D.Conn.1999); *see also Mercado-Amador v. Reno,* 47 F.Supp.2d 1219, 1224 (D.Or.1999) (holding that a deportation proceeding commenced after an order to show cause issued).

9

Bustamante.  *See Mercado-Amador v. Reno,* 47 F.Supp.2d 1219, 1224 (D.Or.1999).  As soon as the warrant of detainer was lodged against Bustamante, his release from custody was problematic absent further proceedings.  The combined effect of the two was that, as of June 28, 1995, Bustamante was clearly subject to the authority of the INS, was unlikely to be released without more being done, and faced eventual removal proceedings.  Moreover, at the time the warrant of detainer had been lodged and the show cause order was served on June 28, 1995, Bustamante was eligible for consideration of an INA § 212(c) discretionary waiver, and he continued to be eligible until April 24, 1996, the effective date of AEDPA—which came almost 10 months after the INS served the order.

Considerations of fairness convince us that for purposes of deciding which law applies, the removal proceedings in this case should be viewed as commencing at least on that date, June 28, 1995, when the show cause order had been served and the warrant of detainer lodged.  *See Mercado-Amador,* 47 F.Supp.2d at 1224 (asserting that "fairness requires that the INS, having placed Mercado under its authority, should also live with the results of that decision");  *see also Canela v. United States Dept. of Justice,* 64 F.Supp.2d 456, 458 (E.D.Pa.1999) (noting that "[t]he date at which the [INS] regulations consider a case to have commenced is essentially random") (citation omitted).  We so hold.  Because the removal proceedings against Bustamante effectively began on June 28, 1995, the transitional rules of IIRIRA govern and habeas review of Bustamante's removal under 28 U.S.C. § 2241 is proper.

An alternative argument by the government merits some discussion.  The government contends that even if the service of the show cause order is deemed to commence Bustamante's removal proceedings, the INS nonetheless properly elected to apply the permanent provisions of IIRIRA to his case, pursuant to § 309(c)(2) of that legislation.  *See* IIRIRA § 309(c)(2), codified in a note following 8 U.S.C. § 1101.  Under IIRIRA § 309(c)(2), in a removal proceeding falling under the transitional rules and in which no evidentiary hearing has taken place, the INS may elect to apply the permanent provisions of IIRIRA by "provid[ing] notice of such election to the alien involved not later than 30 days before the date any evidentiary hearing is

10

commenced." *See id.* The government argues that the notice to appear, which was served on Bustamante more than 30 days before an evidentiary hearing took place, constituted proper notice of its election to apply the permanent provisions of IIRIRA to Bustamante's case. The crux of the government's argument is that, because the notice to appear is the new charging document under IIRIRA, serving the notice to appear necessarily informs an alien that the permanent provisions of IIRIRA will be applied to his proceeding. However, the provision the government relies on seems to require more explicit notice than that.

IIRIRA § 309(c)(2) specifically requires that, when the INS elects to apply the permanent rules and procedures of IIRIRA to a pending proceeding, it must give the alien "notice of such election." *See id.* The term "notice to appear" is noticeably absent from § 309(c)(2), even though another part of that subsection refers to 8 U.S.C. § 1229, which specifically mentions the newly created notice to appear. Had Congress intended for the service of a notice to appear to constitute proper notice of election, it easily could have said so. *See United States v. Jordan,* 915 F.2d 622, 628 (11th Cir.1990) (noting that " 'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion' ") (citations omitted). In fact, Congress could have simply said that the permanent rules applied to any case in which the INS filed a notice to appear after having earlier served a show cause order. But it did not say that. Instead, Congress required the INS to give an alien already in removal proceedings notice that the otherwise applicable rules had been changed, and we think that Congress meant explicit notice.[15] *Cf. In re Haas,* 48 F.3d 1153, 1156 (11th Cir.1995) (explaining that "[w]here Congress knows how to say something, but

---

[15]To the extent that Congress contemplated the existence of "outstanding" show cause orders—orders served on aliens but not filed— § 309(c)(2) appears to require the INS to file the show cause order and then provide the alien with separate notice that the INS has chosen to apply the new rules and procedures of IIRIRA. Under current regulations, even though an order to show cause was issued before IIRIRA, filing it afterwards formally commences removal proceedings. *See* 8 C.F.R. § 3.14 (1999) (providing that jurisdiction vests and proceedings before an immigration judge commence when a "charging document" is filed with immigration court); 8 C.F.R. § 3.13 (1999) (defining "charging document" to include an order to show cause for proceedings initiated prior to April 1, 1997).

chooses not to, its silence is controlling") (citing *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994)).

For reasons we explained earlier, Bustamante was in removal proceedings when he was served with the show cause order and the warrant of detainer was pending against him. The notice to appear did not explicitly indicate—and thus did not sufficiently inform Bustamante—that the INS had elected to apply the new IIRIRA rules and procedures to his proceeding. Thus, the INS did not effect an election to apply the new permanent provisions of IIRIRA to the proceeding. It follows that Bustamante's proceedings are governed by the transitional rules of IIRIRA.

### III. CONCLUSION

For purposes of determining the application of AEDPA § 440(d) and the transitional rules of IIRIRA, we hold that a removal proceeding has effectively commenced once INS has served the alien with an order to show cause and lodged a warrant of detainer against him. Because Bustamante was served with an order to show cause on June 28, 1995, at which time a warrant of detainer was pending against him, the transitional rules of IIRIRA govern his case. Under those transitional rules, 28 U.S.C. § 2241 habeas corpus jurisdiction exists to review Bustamante's claim that he was erroneously deemed ineligible for a discretionary waiver of deportation under pre-amendment INA § 212(c).[16]

Our determination that the deportation proceedings against Bustamonte began on June 28, 1995, which was before the effective date of AEDPA, also leads us to conclude that the AEDPA § 440(d) ban on discretionary waiver relief does not apply to this case. On remand, the district court should instruct the

---

[16]In allowing Bustamante to seek habeas review of his removal, "we do not decide whether every statutory claim raised by an alien is cognizable on habeas." *Mayers,* 175 F.3d at 1301. Bustamante's claim that he should have been considered for a pre-amendment INA § 212(c) waiver of deportation is virtually identical to the claims found "cognizable on habeas" in *Mayers,* and therefore, habeas review of his claim is appropriate. *See id.* (explaining that the petitioners' claims challenging the retroactive application of AEDPA § 440(d) "affect [their] substantial rights and are of the nature that courts have enforced through judicial review even when Congress has attempted to limit the courts' jurisdiction in immigration matters as far as constitutionally permitted").

immigration court to reconsider Bustamante's claim for a discretionary waiver of relief under pre-amendment

INA § 212(c).  Obviously, we offer no opinion on the substance of his § 212(c) waiver claim.

REVERSED AND REMANDED.