Hoang Thanh TUNG, Petitioner,

v.

Doris MEISSNER, Commissioner, Immigration and Naturalization Service, and William Harrington, District Director, Dallas Ins, Respondents.

No. CIV. A. 4:98–CV–1127–Y.

United States District Court, N.D. Texas, Fort Worth Division.

March 24, 2000.

Hoang Thanh Tung, Pro Se, Mansfield, TX, for Plaintiffs.

Mattie Peterson Comptom, United States Attorney's Office, Fort Worth, TX, for Defendants.

*ORDER GRANTING RESPONDENTS' MOTION TO DISMISS*

MEANS, District Judge.

This is a petition for writ of habeas corpus by a federal prisoner pursuant to 28 U.S.C. § 2241 et seq. Now pending before the Court is the respondents' April 21, 1999 Motion to Dismiss.

## A. PARTIES

Petitioner Hoang Thanh Tung,[1] INS# A42 631 423, is a deportable alien who was detained at the Mansfield Detention Center, Mansfield, Texas at the time of the filing of this federal petition.[2]

The respondents are Doris Meissner, Commissioner of the Immigration and Naturalization Service, and William Harrington, District Director of the Dallas Office of the Immigration and Naturalization Service.

## B. PROCEDURAL HISTORY

The petitioner is a native and citizen of Viet Nam, who entered the United States at Seattle, Washington as an immigrant on August 29, 1990. (Respondents' Answer at Exhibit 2). On April 30, 1992, after jury trial, the petitioner was convicted in the Superior Court of Orange County, California, Case No. C–90246, of two counts of first degree robbery of a residence. (Respondents' Answer at Exhibit 1). He was sentenced to a term of imprisonment of six years on Count I, and four years incarceration on Count II, imposed to run concurrently. *Id.* The sentence was further enhanced by a consecutive term of four years' confinement due to the petitioner's use of a deadly weapon during the commission of the offenses, resulting in a total term of incarceration of ten years. *Id.*

1. Review of the file reveals that it appears as if the petitioner's correct name is "Tung Thanh Hoang," and not "Hoang Thanh Tung."

2. Telephonic communication with prison officials at the Mansfield Detention Center has revealed that the petitioner was transferred on June 22, 1999, to a facility in Johnson County, Oklahoma. The petitioner has not notified this Court of his current place of incarceration.

On April 22, 1997, the INS issued a Notice to Appear, charging the petitioner with being subject to removal[3] from the United States pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), as amended, as an alien who any time after entry was convicted of an aggravated felony. (Respondent's Answer at Exhibit 2). On May 2, 1997, the petitioner was arrested by immigration officials, served with the Notice to Appear, and taken into custody. *Id.* On May 21, 1997, additional charges were lodged against the petitioner relating to his having been sentenced to confinement on the State of California offenses for a term of ten years, which were filed with the immigration court on May 22, 1997. (Respondent's Answer at Exhibit 3). The petitioner, represented by counsel, appeared before an immigration judge on July 8, 1997, for removal proceedings. The immigration judge found the petitioner removable as charged and he was ordered deported to Viet Nam, having been found ineligible for relief from removal in that he had been convicted of an aggravated felony as defined in Section 101(a)(43) of the Immigration and Nationality Act and was not entitled to a grant of asylum or a withholding of removal. (Respondent's Answer at Exhibit 4). The petitioner filed an appeal from the order of removal to the Board of Immigration Appeals (BIA). (Respondent's Answer at Exhibit 5). On July 30, 1998, the BIA dismissed the appeal as meritless. (Respondent's Answer at Exhibit 6).

The petitioner then filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Texas, Sherman Division, and the case was subsequently transferred to this Court. The respondents have responded to the petition by filing an Answer and Motion to Dismiss with supporting documentary ex-hibits. The petitioner has not filed a reply. Before the respondents had filed their response to the petition, the petitioner's custody status was reviewed by the INS to determine whether release from the custody of the INS would be appropriate. (Respondent's Answer at Exhibit 7). On January 25, 1999, it was determined that release was not warranted at that time due to the petitioner's past criminal history and the continued threat to the community if he were released. *Id.* Then–Acting District Director Harrington found that it was not clearly evident that the Petitioner was unlikely to pose a threat to the community and/or unlikely to violate the conditions of his release. *Id.*

## C. ISSUE

The petitioner claims that the final order of removal and the resultant continued detention by the INS violate his liberty interests protected by the Fifth Amendment to the Constitution.

## D. EXAMINATION OF THE ISSUES

■ The petitioner essentially challenges the final order of removal and execution thereof which has resulted in his continued confinement until such time as he might be deported to his country of origin, Viet Nam. The threshold inquiry in this case is whether this Court has jurisdiction to review deportation actions under the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 545.

Before Congress' recent overhaul of the immigration laws, 8 U.S.C. § 1105a(a)(10) provided that any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas-corpus proceedings. *See Gutierrez–Martinez v. Reno,* 989 F.Supp. 1205, 1208 (N.D.Ga.1998). In 1996, Congress passed the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, and the IIRIRA, both

---

**3.** The Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 545, uses the term "removal" instead of "deportation."

of which severely limiting federal courts' jurisdiction to review immigration cases. *See Max–George v. Reno,* 205 F.3d 194, 194-198 (5th Cir.2000); *Olvera v. Reno,* 20 F.Supp.2d 1062 (S.D.Tex.1998). Section 401(e) of the AEDPA eliminated habeas-corpus review under the INA Section 106, former Title 8 U.S.C. § 1105a(a)(10). Section 440(a) of the AEDPA, which amended INA § 106 states: "Any final order of deportation against an alien who is deportable by reason of having committed [certain criminal offenses], shall not be subject to review by any court." Only a few months after the AEDPA became effective, on September 30, 1996, Congress enacted the IIRIRA. Section 306 of the IIRIRA entirely repealed Section 106 of the AEDPA and replaced it with a new provision governing judicial review of deportation proceedings, INA Section 242, codified at 8 U.S.C. § 1252. INA Section 242(g), as amended by Section 306(a) of the IIRIRA now provides:

> (g) Exclusive Jurisdiction. Except as provided in this section and notwithstanding any other provision of the law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g). The statute also provides that decisions made at the discretion of the attorney general, and removal based on the commission of specified criminal offenses, are not subject to judicial review. 8 U.S.C. § 1252(a)(2)(C).

In prescribing which provisions of the INA, as amended, apply in a removal case, Congress divided removal cases into the following three categories: (1) proceedings that culminated in a final order before October 31, 1996, are governed by AEDPA § 440(a); (2) proceedings that culminated in a final order after October 31, 1996, but commenced before April 1, 1997 (the effective date of the IIRIRA) are governed by the INA as amended by the special transitional rules of IIRIRA; and (3) proceedings that commenced after April 1, 1997, are governed by the provisions of the INA as permanently amended by the IIRIRA. *See Alanis–Bustamante v. Reno,* 201 F.3d 1303, 1306–07 (11th Cir.2000); *Mayers v. U.S. Dept. of INS,* 175 F.3d 1289, 1293 (11th Cir.1999). In the instant case, only post-IIRIRA law applies (i.e., the permanent provisions of the INA, as amended by the IIRIRA), as opposed to the transitional rules, because the Petitioner's removal proceedings commenced with the issuance of the notice to appear on April 22, 1997, a date after the IIRIRA's effective date. *See Max–George,* 205 F.3d at 196-197 (where the court of appeals noted its first opportunity to examine the permanent rules).

In the case of *Max–George v. Reno,* an opinion considering the issue of the district court's jurisdiction in these immigration matters, the Court of Appeals for the Fifth Circuit recently held that under the permanent provisions of the IIRIRA, Section 242(g) of the INA, as amended by IIRIRA, explicitly withdraws a district court's jurisdiction to issue writs of habeas corpus under Section 2241 to certain aliens challenging their removal from the United States. *See Max–George,* 205 F.3d at 198-199; *see also Richardson v. Reno,* 162 F.3d 1338, 1356–59 (11th Cir.1998), *vacated,* 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), *reinstated,* 180 F.3d 1311 (11th Cir.1999).[4] Both the Fifth Circuit and the Eleventh Circuit rejected the

---

**4.** The Supreme Court vacated the judgment in *Richardson,* and remanded the case to the Eleventh Circuit for further consideration in light of *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). On remand, the Eleventh Circuit reaffirmed its holding in *Richardson I* that the IIRIRA's amendments to the INA "preclude § 2241 habeas jurisdiction over an alien's petition challenging his removal proceedings and detention pending removal proceedings." *Richardson v. Reno,* 180 F.3d 1311, 1314 (11th Cir.1999).

argument that some form of habeas corpus review of such removal determinations must be retained. *Max–George*, 205 F.3d at 198–199 (noting that although IIRIRA has eliminated federal-court habeas jurisdiction, it leaves open some judicial consideration on petitions for review of appeals from BIA decisions); *Richardson*, 162 F.3d at 1354, 1360–78 (holding that IIRIRA's repeal of Section 2241 jurisdiction is not unconstitutional because IIRIRA does not eliminate all judicial review of immigration matters and expressly noting "Congress had abbreviated judicial review to one place and one time: only in the court of appeals and only after a final removal order and exhaustion of all administrative remedies.")

On February 24, 1999, the Supreme Court reviewed the subject issue of jurisdiction, and concluded in *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) that INA § 242(g) does not apply to the "universe of deportation [or removal] claims." *Id.* at 943. The Court in *American–Arab* narrowly construed INA § 242(g), 8 U.S.C. § 1252(g), holding that the statute "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* Section 1252(g), therefore, precludes federal courts from having jurisdiction to entertain claims directed towards the "commencement of proceedings," "the adjudication of cases," or the "execution of a removal order." *Id.* In this case, to the extent that the petitioner is challenging the attorney general's decision to execute the removal order, this case falls within the purview of § 1252(g). Accordingly, under the permanent provisions of IIRIRA, the only proper venue for the petitioner's challenge to his removal would be direct appeal in the Fifth Circuit Court of Appeals from his final removal order pursuant to INA § 242(b). *See Max–George*, 205 F.3d at 199–202; *Alanis–Bustamante v. Reno*, 201 F.3d at 1307.

■ The petitioner also claims that his country of origin, Viet Nam, has as of yet refused to accept him, resulting in his continued and prolonged detention while he awaits deportation. He asserts that his mandatory, indefinite detention pursuant to Section 440(c) of the AEDPA under these circumstances is unconstitutional. To the extent this court may retain jurisdiction to consider this narrow claim, which while intimately related to efforts to deport the Petitioner, is not itself a challenge to a decision to execute final removal orders,[5] the petitioner is not entitled to relief on this claim since it is meritless.

The rules established by the immigration provisions of the AEDPA require mandatory detention of all aliens awaiting deportation, regardless of danger of flight. *See* AEDPA, Pub.L. 104–32 § 440(c), 110 Stat. 1214, 1277 (amending 8 U.S.C. § 1252(a)(2) to delete provisions allowing release of nondangerous, nonflight-risk detainees). *See Zadvydas*, 185 F.3d at 286. Section 440(c) of the AEDPA does not apply to the petitioner, because the removal proceedings instituted against him commenced after the date the IIRIRA was enacted. *Id.* In this case, INA Section 241 applies, which requires the attorney general to remove an alien from the United States within the "removal period," which is generally the ninety days beginning when an order of removal becomes administratively final, when any judicial review thereof is completed, or when the alien is released from confinement (other than under an immigration process), whichever is latest, and is required to detain the alien during the removal period. INA §§ 241(a)(1), (a)(2), 8 U.S.C. § 1231(a)(1),

---

5. *See Zadvydas v. Underdown*, 185 F.3d 279, 285–86 (5th Cir.1999)(federal courts have jurisdiction to review claim that continued detention by INS following deportation order violated due process rights, in that decision to detain was not decision to execute removal order so as to be unreviewable by courts pursuant to IIRIRA).

(a)(2). *See. Zadvydas*, 185 F.3d at 287. Certain classes of aliens, including criminal aliens, such as the petitioner, may however be detained beyond the ninety-day removal period pursuant to 8 U.S.C. § 1231(a)(6). *Id.* at 286 n. 6.

It is well settled in the analogous situation involving excludable aliens awaiting return to their native countries, that such aliens can be detained even if such detention is prolonged because no country is willing to take the alien. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215–16, 73 S.Ct. 625, 97 L.Ed. 956 (1953). *See also Gisbert v. United States Attorney General*, 988 F.2d 1437, 1448 (5th Cir.1993)(continued detention of Mariel Cubans did not constitute punishment without trial in violation of aliens' substantive due process rights, even though there was no guarantee that deportation could be effectuated in the near future). The same is true under earlier law for deportable aggravated felons. The courts have held that where circumstances beyond the control of the attorney general and her agents make immediate deportation impracticable, unadvisable, or impossible, Congress has not expressly limited the power of the attorney general to detain such aliens. *See Tran v. Caplinger*, 847 F.Supp. 469, 471–74 (W.D.La.1993)(recognizing mandatory language of former 8 U.S.C. § 1252(a)(2) and absence of time limit on detention statutorily authorizes indefinite detention of deportable aliens who are aggravated felons when immediate deportation is not possible because of lack of diplomatic relations with alien's native country and the alien has not overcome the presumption against his release, with such detention not being violation of petitioner's substantive or procedural due process rights). *See also Thenekhamsyharth v. Caplinger*, 1996 WL 104199 (E.D.La.1996)(holding resident alien convicted of aggravated felonies detained beyond six months pending deportation not entitled to habeas-corpus relief pursuant to 28 U.S.C. § 2241 as no violation of due-process rights resulted from continued detention).

These principles have now been extended to resident aliens by the Fifth Circuit in *Zadvydas*, 185 F.3d at 285–86, where the court of appeals held that the government may detain a resident alien based on either danger to the community or risk of flight while good-faith efforts to effectuate the alien's deportation continue and reasonable parole and periodic review procedures are in place. In this case, a final order of removal was entered on July 8, 1997. Apparently, the Consulate of Vietnam has not issued travel documents to effectuate Petitioner's removal from the United States, resulting in his continued confinement. During his continued detention, the petitioner is properly being afforded periodic review of his custody status, during which he has been found to pose a danger to the community and a flight risk. (Respondent's Answer at Exhibit 7). Thus, based upon the foregoing, the petitioner was properly taken into the custody of the INS and his continued detention is lawful. He is therefore not entitled to habeas-corpus relief.

It is therefore ORDERED that Respondent's April 21, 1999 Motion to Dismiss [docket no. 11] be, and is hereby, GRANTED.

It is further ORDERED that Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 be, and is hereby, DISMISSED WITH PREJUDICE.