Hugo ARMENDARIZ–MONTOYA, Petitioner–Appellee,

v.

Roseanne C. SONCHIK, District Director, Immigration and Naturalization Service, Respondent–Appellant.

No. 01–16029.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 2002.

Filed May 30, 2002.

---

Shelly Goad, Department of Justice, Office of Immigration Litigation, Washington, D.C., argued the cause for the respondent-appellant. Robert D. McCallum, Jr., Assistant Attorney General, Stuart E. Schiffer, Acting Assistant Attorney General, David J. Kline, Principal Deputy Director, and Hugh G. Mullane, Office of Immigration Litigation, Washington D.C.; Paul K. Charlton, United States Attorney and Cynthia Parsons, Assistant United States Attorney, Phoenix, Arizona, were on the briefs.

Vikram K. Badrinath argued the cause for the petitioner-appellee.

Before O'SCANNLAIN and
TALLMAN, Circuit Judges, and KING *,
District Judge.

**OPINION**

O'SCANNLAIN, Circuit Judge.

We must decide whether deportation proceedings commence with the service of an order to show cause upon the alien or with the filing of such an order with the Immigration Court.

I

In 1972, Hugo Armendariz–Montoya ("Armendariz") entered the United States without inspection from Mexico when he was three years old. In 1978, he adjusted his status to that of a lawful permanent resident. He has resided in the United States since his entry.

In 1994, the state of Arizona indicted Armendariz for possession of cocaine with the intent to distribute. Armendariz pleaded not guilty, electing a jury trial. In September 1995, he was convicted and sentenced to five years, eight months imprisonment. His subsequent appeals were unsuccessful.

On September 22, 1995, the Immigration and Naturalization Service ("INS") lodged a detainer on Armendariz with the Arizona Department of Corrections. On April 5, 1996, the INS issued an order to show cause ("OSC"), charging Armendariz as deportable for having committed a qualifying controlled substance offense and an aggravated felony. *See* 8 U.S.C. § 1251(a)(2)(A)(iii), (B)(i) (1994) (current version at 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i)). On April 22, 1996, the INS served the OSC upon Armendariz and on December 19, 1996, it filed the order with the Immigration Court.

In April 1997, an Immigration Judge ("IJ") conducted a deportation hearing. Armendariz conceded deportability, but sought a discretionary waiver of inadmissibility under INA § 212(c). Section 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which was enacted on April 24, 1996, categorically negates § 212(c) relief for those aliens deportable for having committed a qualifying controlled substance offense or an aggravated felony.[1] Pub.L. 104–132, 110 Stat. 1214, 1277. The IJ determined that AEDPA § 440(d) applied to Armendariz who was thus ineligible for a § 212(c) waiver.

Armendariz appealed to the Board of Immigration Appeals ("BIA"), which affirmed. He subsequently filed a petition for review with this court, but we dismissed for lack of jurisdiction. *See Armendariz–Montoya v. INS*, No. 97–71305(9th Cir. Feb. 29, 2000); *see also* IIRIRA § 309(c)(4)(G), 100 Stat. at 3009–626 to 627 (*reprinted at* 8 U.S.C. § 1101, Historical and Statutory Notes) (stripping jurisdiction over claims on direct review for aliens deportable for certain grounds).

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") repealed § 212(c) entirely, replacing it with a new form of discretionary relief called "cancellation of removal." *See* Pub.L. No. 104–208, § 304(b), 100 Stat. 3009, 3009–597 (1996) (codified at 8 U.S.C. § 1229b). However,

IIRIRA's transitional rules maintain the availability of § 212(c) relief, subject to AEDPA § 440(d). *See* IIRIRA § 309(c)(1), 100 Stat. at 3009 625(*reprinted at* 8 U.S.C. § 1101, Historical and Statutory Notes). Armendariz's proceedings fall within IIRIRA's transitional rules. *See, e.g., Kalaw v. INS*, 133 F.3d 1147, 1150–51 (9th Cir.1997). Therefore, IIRIRA's repeal of § 212(c) does not affect Armendariz.

In March 2000, Armendariz filed a habeas petition with the district court. *See INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that neither AEDPA nor IIRIRA repealed habeas jurisdiction under 28 U.S.C. § 2241). He argued that AEDPA § 440(d) is inapplicable to his deportation proceedings. Alternatively, he claimed that § 440(d) violates the Equal Protection Clause.

The magistrate judge recommended that the court grant the petition based on his conclusion that Armendariz's deportation proceedings commenced with the *service,* not with the *filing,* of the OSC. Since the INS served the OSC two days before the enactment of AEDPA, the magistrate concluded that § 440(d) was inapplicable and thus he was eligible to seek a § 212(c) waiver. The magistrate declined to address Armendariz's contention that § 440(d) violates equal protection.

The district court adopted the magistrate's recommendation without comment. The INS noted a timely appeal.

## II

Whether AEDPA § 440(d) applies, depends, of course, on the date Armendariz's deportation proceedings commenced. *Cortez–Felipe v. INS,* 245 F.3d 1054 (9th Cir. 2001) tells us that deportation proceedings commence with the filing of the OSC with the Immigration Court. In *Cortez,* the alien suspected that the INS would initiate deportation proceedings. IIRIRA was set to take effect on April 1, 1997. However, by late March 1997, the INS had not taken any action. In the hope of avoiding IIRIRA's amendments, the alien contacted the INS to request initiation of deportation proceedings before April 1. On March 27, the INS served the OSC, but did not file it until after IIRIRA became effective.

In holding that proceedings commenced with the filing of the OSC, we relied upon INS regulations to this effect. *See* 8 C.F.R. § 3.14(a) ("[P]roceedings ... commence when a charging document is filed with the Immigration Court by the Service."); *id.* § 239.1(a) ("Every ... proceeding ... to determine the deportability ... of an alien is commenced by the filing of a notice to appear with the Immigration Court...."); *id.* § 240.55 ("A deportation proceeding is commenced by the filing of [the OSC] with the Immigration Court, and an alien is considered to be in deportation proceedings only upon such filing...."). We also stressed that our previous decisions have uniformly stated that deportation proceedings commence with the filing of the OSC. *See El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 749 (9th Cir.1991) ("A deportation proceeding commences with the filing of an order to show cause."); *Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 554 (9th Cir.1990) ("[A] proceeding to determine the deportability of the alien is commenced by an immigration official who issues and files an order to show cause with the Office of the Immigration Judge."); *see also Matter of Sanchez,* 20 I. & N. Dec. 223, 225 (BIA Sept. 21, 1990) ("Jurisdiction vests and proceedings commence before an immigration judge when a charging document is filed with the Office of the Immigration Judge ....").

Nevertheless, Armendariz argues that *Cortez* is distinguishable because it arose in the context of IIRIRA, not AEDPA. Armendariz also claims that *Cortez* is distinguishable because the INS lodged a detainer in this case. We take up his contentions in turn.

## A

Armendariz correctly notes that the First Circuit has drawn a distinction between IIRIRA and AEDPA in determining when deportation proceedings commence.

*Wallace v. Reno*, 194 F.3d 279 (1st Cir. 1999), presented materially identical circumstances to this case, *i.e.*, the applicability of AEDPA § 440(d) turned on whether deportation proceedings commenced with the service or with the filing of the OSC. *Id.* at 287. The court held that deportation proceedings commenced with the service of the OSC. The court refused to accord any deference to the relevant INS regulations. The court stated,

> In this case we are not concerned with the INS's internal time tables, starting points, due dates, and the like but with the judicial question of retroactivity. [The] question turns on ... the realities of reasonable reliance or settled expectations on the part of litigants.... [W]e think that when an order to show cause is served on the alien, the deportation process has effectively begun and expectations properly form, even if there is no actual reliance. *Id.*

In other words, *Wallace* held that § 440(d)'s potential retroactive effect militates against holding that proceedings commence with the filing of the OSC.

*Wallace* was followed by *Costa v. INS*, 233 F.3d 31 (1st Cir.2000). *Costa* presented the identical circumstances present in *Cortez*; the applicability of IIRIRA's permanent amendments turned on whether deportation proceedings commenced with the service or with the filing of the OSC. The court held that deportation proceedings commenced with filing and distinguished *Wallace* on the ground that the potential retroactive effect of AEDPA § 440(d) is greater than that of IIRIRA's permanent amendments. *Id.* at 35–36. It also stressed that *Wallace* arose in the context of habeas, while *Costa* involved a petition for review. *Id.* at 36. According to *Costa*, courts owe greater deference to INS regulations in direct review cases. *Id.* As such, *Costa* owed more deference than *Wallace* to the INS regulations pro-

viding that deportation proceedings commence with the filing of the OSC.

■ [2] We decline to follow the First Circuit's distinction between AEDPA and IIRIRA in determining when deportation proceedings commence. *Cortez* does not allow it, and states in sweeping terms that deportation proceedings commence with the filing of the OSC. 245 F.3d at 1056–57. *Cortez* accorded great weight to the relevant INS regulations, which do not allow for a different outcome depending upon whether a particular section of AEDPA or IIRIRA is involved. *See* 8 C.F.R. § 3.14(a); *id.* § 239.1(a); *id.* § 240.55.

In any event, we find the First Circuit's distinction unpersuasive. *Wallace* inappropriately considered the potential retroactive effect of § 440(d) in determining when deportation proceedings commence. A determination of when deportation proceedings commence stands apart from a consideration of § 440(d)'s potential retroactive effect. As will be discussed shortly, even though deportation proceedings commence with filing, § 440(d) does not apply if its application would result in an a retroactive effect. Finally, we are also unpersuaded by *Costa* that the time deportation proceedings commence should turn on whether a particular section of AEDPA or IIRIRA is involved.

### B

*Armendariz* also claims that *Cortez* is distinguishable because the INS issued a detainer in this case. In particular, he relies upon the Eleventh Circuit's decision in *Alanis-Bustamante v. Reno*, 201 F.3d 1303 (11th Cir.2000).

In that case, the INS served an OSC upon the alien while he was imprisoned in June 1995. The INS also contemporaneously lodged a detainer with prison authorities. However, the INS did not file the OSC until June 1997. The court held that

the combination of the service of the OSC with the lodging of the detainer "is enough to commence proceedings for purposes of determining the applicable law." *Id.* at 1310. The court explained that the two actions afforded the INS considerable power over the alien. *Id.* at 1310. Specifically, the actions gave the INS the power to prevent Bustamante's release from custody at the conclusion of his prison term.

In *Cortez*, the INS did not lodge a detainer. Armendariz urges us to adopt the logic of the Eleventh Circuit, and hold that deportation proceedings commence with the service of the OSC if a detainer is contemporaneously lodged. *Cortez* does not allow for such a rule. The relevant INS regulations make the filing of the OSC, not the lodging of a detainer, the critical event.

## C

In sum, *Cortez* dictates that Armendariz's proceedings commenced with the filing of the OSC. Because the INS did not file the OSC until December 1996, his proceedings were not pending at the time of AEDPA's enactment.

## III

Armendariz further argues that even if his deportation proceedings commenced after the enactment of AEDPA, § 440(d) is nonetheless inapplicable. Specifically, he contends that application of § 440(d) would result in an impermissible retroactive effect.

■ When a statutory provision lacks an effective date, we first ask whether Congress has prescribed its temporal reach. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). "If there is no congressional directive on the temporal reach of a statute, we determine whether the application of the statute to the conduct at issue would result in a retroactive effect. If so, then in

keeping with our 'traditional presumption' against retroactivity, we presume that the statute does not apply to that conduct." *Martin v. Hadix*, 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347, (1999).

We previously observed that Congress did not prescribe § 440(d)'s temporal reach. *See Magana–Pizano*, 200 F.3d 603, 612 (9th Cir.1999). Therefore, § 440(d) applies to Armendariz unless its application would result in a retroactive effect. *See, e.g., Martin*, 527 U.S. at 352, 119 S.Ct. 1998.

In *INS v. St. Cyr*, 533 U.S. 289, 321–22, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that application of § 440(d) to those aliens who pleaded guilty prior to AEDPA's enactment results in a retroactive effect. At the time of plea, those aliens had the possibility of obtaining a § 212(c) waiver of inadmissibility. Section 440(d) eliminated that possibility. If those aliens had been aware of § 440(d) at the time of plea, they might have elected to proceed to trial in lieu of pleading guilty. *Id.* at 323, 121 S.Ct. 2271.

■ However, as we held in *United States v. Herrera–Blanco*, 232 F.3d 715, 719 (9th Cir.2000), application of § 440(d) to those aliens who were convicted after a jury trial does not result in a retroactive effect. Unlike aliens who pleaded guilty, aliens who elected a jury trial cannot plausibly claim that they would have acted any differently if they had known about § 440(d). As the Seventh Circuit explained,

> It would border on the absurd to argue that these aliens might have decided not to commit drug crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation. *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir.1998).

Armendariz pleaded not guilty and elected a jury trial. Therefore, application of § 440(d) does not result in any retroactive effect. Accordingly, § 440(d) is applicable, and Armendariz is barred from seeking § 212(c) relief.

## IV

■ Armendariz lastly claims that if § 440(d) applies, it violates equal protection. While neither the magistrate nor the district court reached this issue, it raises a pure question of law that may be answered by this court in the first instance. *See, e.g., Crawford v. C.I.R.*, 266 F.3d 1120, 1121 (9th Cir.2001).

Armendariz's argument is rooted in the history of the availability of § 212(c) waivers. Before IIRIRA, the INA distinguished between exclusion proceedings, which were brought against aliens attempting to enter the United States (including those returning to the United States), and deportation proceedings, which were brought against aliens already present in the United States. *See, e.g., Requena–Rodriguez v. Pasquarell*, 190 F.3d 299, 308 (5th Cir.1999).

Section 212(c) provides, "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily ... and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General...." 8 U.S.C. § 1182(c) (repealed 1996). By its plain terms, § 212(c) applies only to exclusion proceedings, *i.e.*, aliens seeking to return to the United States. *See, e.g., Requena–Rodriguez*, 190 F.3d at 308. However, in a series of decisions in the 1950s and 1960s, the BIA interpreted § 212(c) to apply to certain aliens in deportation proceedings. *See Arias–Uribe v. INS*, 466 F.2d 1198, 1199–1200 (9th Cir.1972) (collecting cases). Specifically, the BIA held that § 212(c) waivers were available to those aliens in deportation proceedings who had left the United States, but who had successfully returned to the country. *See, e.g., Matter of G.A.*, 7 I & N Dec. 274 (BIA July 19, 1956). Section 212(c) relief was unavailable to those aliens in deportation proceedings who had never left the United States. *See, e.g., Arias–Uribe*, 466 F.2d at 1199–1200.

In *Francis v. INS*, 532 F.2d 268 (2d Cir.1976), the Second Circuit held that the BIA's distinction among deportable aliens was irrational. The BIA later embraced this decision, holding that § 212(c) is available for all aliens in deportation proceedings. *See Matter of Silva*, 16 I. & N. Dec. 26, 29–30 (BIA Sept. 10, 1976); *see also Tapia–Acuna v. INS*, 640 F.2d 223, 225 (9th Cir.1981) (approving of *Silva*).

Section 440(d) makes § 212(c) relief unavailable to legal permanent residents "who are *deportable* by reason of having committed" an aggravated felony. 110 Stat. at 1277(emphasis added). The BIA has held that the term "deportable" means that § 440(d) only applies to aliens in deportation, as opposed to exclusion, proceedings. *See In re Fuentes–Campos*, 21 I. & N. Dec. 905, 907–10 (BIA May 14, 1997).

■ Armendariz argues that § 440(d) revives an irrational distinction between aliens in exclusion and deportation proceedings. We rejected the identical challenge in *United States v. Estrada–Torres*, 179 F.3d 776 (9th Cir.1999), *overruled on other grounds, United States v. Rivera–Sanchez*, 247 F.3d 905, 909 (9th Cir.2001) (en banc). In that case, we disagreed with the BIA's construction of § 440(d). *Id.* at 779–80. We held that despite § 440(d)'s plain language, it applies equally to exclusion and deportation proceedings. *Id.* Because Congress did not draw any distinction between aliens in deportation and those in exclusion proceedings, § 440(d) does not violate equal protection. *Id.*

While our sister circuits have uniformly rejected an identical challenge, they have employed different reasoning from that of *Estrada–Torres.* *See Domond v. INS,* 244 F.3d 81, 87 88 (2d Cir.2001); *Jurado–Gutierrez v. Greene,* 190 F.3d 1135, 1152–53 (10th Cir.1999); *Requena–Rodriguez,* 190 F.3d at 309; *DeSousa v. Reno,* 190 F.3d 175, 185(3d Cir.1999); *LaGuerre,* 164 F.3d at 1041. These circuits have adopted the BIA's interpretation that § 440(d) only applies to deportation, and not to exclusion proceedings. Our sister circuits, however, have concluded that it is rational to apply a harsher standard to deportation proceedings. As the Third Circuit explained,

> In order to aid the United States in expelling criminal aliens from the country, Congress rationally could have decided to encourage such aliens to voluntarily leave the country as a carrot to a potential waiver of removal when they sought reentry. Creating such an incentive may have appeared desirable to Congress for several reasons. First, Congress could have rationally speculated that not all aliens who voluntarily left the country would return. Second, because exclusion proceedings provide fewer procedural protections than deportation proceedings, Congress may have reasoned that encouraging aliens to seek waivers through the exclusion process would decrease the United States' administrative costs in expelling criminal aliens. *DeSousa,* 190 F.3d at 185.

These decisions have stressed that Congress did not revive an arbitrary distinction in passing § 440(d). The BIA previously had drawn a distinction *among* aliens in *deportation* proceedings; § 440(d) draws a distinction between exclusion and deportation proceedings as a whole. In

any event, *Estrada–Torres* dictates that Armendariz's equal protection claim is without merit.

**REVERSED.**