[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-15657

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 27, 2003
THOMAS K. KAHN
CLERK

BIA No. A38-838-056

BEVERLY LYN QUEE DE CUNNINGHAM,

Petitioner,

versus

U. S. ATTORNEY GENERAL,
IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

_____

Petition for Review of a Final Decision of
the Board of Immigration Appeals

_____

(June 27, 2003)

Before WILSON and RONEY, Circuit Judges, and LIMBAUGH*, District Judge.

PER CURIAM:

_____

*Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

Beverly Lyn Quee De Cunningham ("Lyn Quee") petitions this Court pursuant to 8 U.S.C. § 1252 for direct review of the Board of Immigration Appeals' ("BIA") summary affirmance of an Immigration Judge's ("IJ") denial of her application for waiver of deportation proceedings pursuant to the Immigration and Nationality Act ("INA") § 242 *et seq.*, 8 U.S.C. § 1252 *et seq,* as amended in 1996 ("new INA"). Lyn Quee does not challenge the IJ's finding that she was deportable but instead argues that she is entitled to apply for discretionary relief under the pre-1996 INA § 212(c) and (h). We hold that, under the facts of this case, the removal proceedings commenced *prior* to enactment of the 1996 amendments to the INA, that the pre-1996 INA applies, and that Lyn Quee is entitled to apply for discretionary relief under the pre-1996 INA § 212(c) and (h).

## Lyn Quee's Background & INS Removal Proceedings

Lyn Quee is a native and citizen of Jamaica who has been a lawful permanent resident alien of the United States since November 1, 1984. She previously resided in the United States from 1980. She has two children, both United States citizens, ages 14 and 15 years old. On March 9, 1990, after a jury trial, Lyn Quee was convicted of possession of counterfeit United States obligations and receipt of counterfeit United States obligations in violation of 18 U.S.C. §§ 472 and 473. She was sentenced to sixteen months' imprisonment.

On January 25, 1991, the Immigration and Naturalization Service ("INS") issued a "Notice of Action" addressed to the "Inmate Records" department of the federal correctional institution housing Lyn Quee. The Notice of Action stated the following, "Investigation has been initiated to determine whether this person is subject to deportation from the U.S." It further stated, "An Order to Show Cause in deportation proceedings, a copy of which is attached, . . . WILL BE ISSUED." It directed prison officials to notify the INS upon the release of Lyn Quee, "IT IS REQUESTED THAT YOU: Notify this office at least 30 days prior to release." Attached to the Notice of Action was a letter advising the warden of the correctional institution that "there will be no detainer lodged. We only request that you notify our Deportation section . . . of [Lyn Quee's] forwarding address at time of release so that further Immigration proceedings may be initiated." On January 28, 1991, the INS delivered an Order to Show Cause ("OSC") to the correctional institution housing Lyn Quee, where a Federal Bureau of Prisons ("BOP") employee signed for receipt of the Order to Show Cause. The OSC stated, "THE COPY OF THIS ORDER SERVED UPON YOU IS EVIDENCE OF YOUR ALIEN REGISTRATION WHILE YOU ARE UNDER DEPORTATION PROCEEDINGS. THE LAW REQUIRES THAT IT BE CARRIED WITH YOU AT ALL TIMES." Administrative records indicate that a copy of the OSC – the charging document – was never filed with the

immigration court.

Lyn Quee was released from prison in late 1991. The BOP released her at the completion of her federal sentence. The record is unclear, however, whether the BOP notified the INS of Lyn Quee's release, as was requested by the INS's letter to the warden.

Approximately six years later, Lyn Quee, following a two-day business trip to Jamaica, attempted to re-enter the United States at Miami International Airport in November 1997. She presented a valid U.S. permanent resident card and a Jamaican passport to an INS officer. The INS officer, however, denied her admission and issued a "Notice to Appear" on February 24, 1998 for removal proceedings as a result of her 1990 counterfeiting convictions. The Notice to Appear denied her admission into the United States because Lyn Quee was "convicted of a crime involving moral turpitude," and charged her with deportability under: (1) INA § 212(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude; and (2) INA § 212(a)(7)(A) as an immigrant, who at the time of application for admission, was not in possession of a valid entry document required by the INA in violation of INA § 211(a).

<u>Lyn Quee's Immigration Hearings</u>

Several hearings were held before an IJ in 1998. Lyn Quee advanced several arguments to the IJ. She admitted the counterfeiting conviction but requested

permission to file for a waiver of inadmissability under INA § 212(c) and § 212(h) and for Cancellation of Removal under § 240(A)(a). She also argued that the counterfeiting conviction was not an aggravated felony in the context of INA § 237(a)(2)(A)(iii). *Strictly applying the new INA*, the IJ sustained the moral turpitude charge for removal and found that her crimes were "aggravated felonies." In so finding, the IJ pretermitted consideration of her requested relief for waiver or cancellation, ruling such relief was statutorily unavailable to an aggravated felon under the new INA. The IJ then ordered Lyn Quee "removed and deported" to Jamaica. Lyn Quee appealed to the BIA, which the BIA summarily affirmed. Lyn Quee then timely filed a "Petition for Review" in this Court. Both jurisdictional briefing and oral argument have taken place.

The Difference Between the Old INA and the 1996 Amended INA

At the time that the INS first issued the OSC in 1991, Lyn Quee would have been entitled to apply for a waiver under INA § 212(c)[1] and § 212(h)[2], and this Court

---

[1] Old INA § 212(c) states in relevant part:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . .. Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at

would have had jurisdiction of an appeal from a BIA order denying her the right to so apply.

In the six-year period between the INS's issuance of the OSC in 1991 and Lyn Quee's 1997 detention at the Miami International Airport, major changes to Immigration law occurred. Congress passed two pieces of legislation: the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), enacted on April 24, 1996; and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, Div. C., 110 Stat. 3009-546 (collectively referred to as "the 1996 amendments"), enacted on

least 5 years.

8 U.S.C. § 1182(c) (1995) (repealed).

[2] Old INA § 212(h) states in relevant part:

The Attorney General may, in his discretion, waive the application of [specified subsections] . . .
  (B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's exclusion would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; and
    (2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status. No waiver shall be provided under this subsection in the case of an alien who has been convicted of (or who has admitted committing acts that constitute) murder or criminal acts involving torture, or an attempt or conspiracy to commit murder or a criminal act involving torture.

8 U.S.C. § 1182(h) (1995) (repealed).

September 30, 1996.

These statutes significantly amended the INA in two respects that are relevant here. Under the new INA, Lyn Quee would lose this appeal for two reasons: (1) this Court would be jurisdictionally barred from review of the BIA's final order; and (2) in any event, no discretionary relief is available for aggravated felons under the new INA.

1. The New INA's Limitation of Federal Courts' Jurisdiction of Immigration Cases.

The new INA substantially limited a federal court's review of any final order against an alien who is found removable for certain reasons. Prior to the enactment of the new INA, this Court had jurisdiction to review all final orders of the BIA, so long as the alien "exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C. § 1105a(c) (1995) (repealed). In fact, this Court had discretionary authority to grant a stay of deportation for an aggravated felon. *See* 8 U.S.C. § 1105a(a)(3) (repealed).

The new INA provides no such jurisdiction for this Court. Section 306 of IIRIRA states:

ORDERS AGAINST CRIMINAL ALIENS. - -

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having

7

> committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii) [defining aggravated felony], (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. § 1252(a)(2)(C) (2000). Therefore, under the new INA, the statute on its face jurisdictionally bars this Court from review of the IJ's pretermittation of Lyn Quee's requests for § 212(c) and § 212(h) waivers.

2. Substantial Limitation of Discretionary Relief under the New INA.

Second, before AEDPA and IIRIRA, the old INA § 212(c) stated that an aggravated felony conviction rendered a lawful permanent resident alien ineligible for a discretionary waiver of deportation *only* when the alien had served five or more years in prison for the aggravated felony. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 297 (2001); 8 U.S.C. § 1182(c) (1995) (repealed). Aliens with less than five years in prison for an aggravated felony were eligible for a § 212(c) discretionary waiver if they were "lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily . . . and who are returning to a lawful unrelinquished domicile of seven consecutive years." 8 U.S.C. § 1182(c) (1995) (repealed). Therefore, because Lyn Quee served only sixteen months' imprisonment, lived more than seven consecutive years in the United States, and voluntarily traveled to Jamaica for a two-

day business trip, she would have been entitled to apply for discretionary waiver of deportation under old INA § 212(c). IIRIRA repealed § 212(c) and replaced it with IIRIRA § 304(b) – 8 U.S.C. § 1229b – that *removed* discretionary waivers for a lawful resident alien if she was convicted of *any* aggravated felony. *See Alanis-Bustamante v. Reno*, 201 F.3d 1303, 1306-07 n.6 (11th Cir. 2000); 8 U.S.C. § 1229b.

Similarly, the old INA § 212(h) could have afforded Lyn Quee discretionary relief. The old INA permitted discretionary waivers for aliens convicted of aggravated felonies, so long as those aliens were not convicted of "murder or criminal acts involving torture." 8 U.S.C. § 1182(h) (1995) (repealed). Section 212(h) was and is available for aliens who are, among other things, parents "of a citizen of the United States . . . and the alien's exclusion would result in extreme hardship to the United States [citizen's family.]" *Id.* § 1182(h)(1)(B). The 1996 amendments, however, also precluded § 212(h) discretionary relief for an alien who had been convicted of *any* aggravated felony. *See* 8 U.S.C. § 1182(h) (1998). Thus, under the new INA, Lyn Quee could *neither* apply for § 212(c) nor § 212(h) relief because her offense is defined as an "aggravated felony" under the new INA. Under the old INA, however, Lyn Quee, despite her "aggravated felony" conviction, would likely have received relief. In fact, a substantial percentage of aliens' applications for discretionary relief have been granted by the INS. *See St. Cyr*, 533 U.S. at 296.

9

The new INA also broadened the old INA's previous definition of "aggravated felony." At the time of both Lyn Quee's counterfeiting conviction and the 1991 issuance of the OSC, the old INA did not enumerate counterfeiting as an "aggravated felony." The new INA expanded the definition of "aggravated felony" so as to include counterfeiting and mandated application of the new definition regardless of whether the conviction was entered before, on, or after the date of enactment of the new INA. 8 U.S.C. § 1101(a)(43) (West Supp. 2000). Procedurally, the 1996 amendments also replaced the OSC with a "notice to appear" as the charging document for removal proceedings. *Alanis-Bustamante*, 201 F.3d at 1305 n.5.

## The Pre-1996 INA Applies

Thus, both the jurisdiction of this appeal, and the availability of the right to apply for a waiver turn on which version of the INA applies. This Court must determine which INA applies because it is the fundamental issue to our jurisdiction. Even under the new INA, this Court would have jurisdiction to determine its jurisdiction.

"To determine this Court's jurisdiction to review the BIA's decision, we must decide what version of the INA applies to Petitioner's appeal. To answer this question, we must determine when proceedings commenced against Petitioner." *Oguejiofor v. Attorney General of U.S.*, 277 F.3d 1305, 1308 (11th Cir. 2002). The

10

"general rule" is that the 1996 amendments do not apply to aliens who are in deportation proceedings prior to April 1, 1997. As such, IIRIRA states that "the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments." IIRIRA § 309(c)(1)(B). This issue turns on whether the deportation proceedings commenced upon service of the OSC in 1991, or upon filing a Notice to Appear on November 25, 1997 with the immigration court. The 1996 amendments, however, apply to any proceedings "commenced" after April 1, 1997. *Oguejiofor*, 277 F.3d at 1308. They do not apply in this case if Lyn Quee's deportation proceedings "commenced" before April 1, 1997.

Thus, the controlling issue turns on when the deportation proceedings commenced. These are the relevant dates and actions:

1980: Since which Lyn Quee has resided in the United States.

November 1, 1984: Since which Lyn Quee has been a lawful permanent resident alien of the United States.

March 9, 1990: After a jury trial, Lyn Quee was convicted of possession of counterfeit United States obligations and receipt of counterfeit United States obligations in violation of 18 U.S.C. §§ 472 and 473.

January 25, 1991: INS issued a "Notice of Action" addressed to the "Inmate Records" department of the federal correctional institution housing Lyn Quee.

11

January 28, 1991: The INS delivered an OSC to the correctional institution housing Lyn Quee, where a Federal Bureau of Prisons employee signed for receipt.

Late 1991: Lyn Quee was released from prison.

April 24, 1996: AEDPA was enacted.

September 30, 1996: IIRIRA was enacted.

November 1997: Lyn Quee attempted to re-enter the United States at Miami International Airport. She was denied admission by an INS official and was issued a "Notice to Appear" on February 24, 1998.

1998: Several hearings on removal proceedings as a result of her 1990 counterfeiting convictions were held before an IJ.

This Court has held that "for purposes of determining the applicability of the 1996 amendments to the INA, removal proceedings against an alien have begun when the INS has served him with an order to show cause and has lodged a warrant of detainer against him." *Alanis-Bustamante*, 201 F.3d at 1304. In *Alanis-Bustamante*, Bustamante, a resident alien, lawfully entered the United States in 1969. In 1994, he was convicted of a federal drug charge and sentenced to thirty-three months' imprisonment and four years' probation. In 1995, while still incarcerated for that federal drug conviction, the INS served Bustamante with an OSC. Shortly before then, the INS also issued a warrant of detainer notifying prison authorities that

Bustamante was to be turned over to the INS after the completion of his sentence. The OSC informed Bustamante that the INS intended to initiate removal proceedings against him and indicated that he was removable under the INA for committing an "aggravated felony," as defined by INA § 241(a)(2)(A)(iii) and § 241(a)(2)(B)(i), which authorizes removal of an alien convicted of a controlled substance crime. The INS, however, failed to file the OSC with the immigration court. After IIRIRA and AEDPA were enacted in 1996 but before Bustamante completed his sentence, the INS issued Bustamante a "notice to appear" and filed that notice with the immigration court. At Bustamante's removal hearing, he admitted the allegations set out in the notice to appear, conceded that he was removable, but requested a waiver of deportation pursuant to pre-1996 amendment INA § 212(c). *Applying the new INA*, the IJ determined that because Bustamante was convicted of an "aggravated felony," he was not eligible for cancellation of removal, which was the IIRIRA equivalent of the pre-amendment INA § 212(c) waiver of deportation. The BIA affirmed.

Bustamante then filed a habeas corpus petition in federal district court, arguing that the BIA had erroneously determined that he was ineligible for a pre-1996 amendment INA § 212(c) waiver of deportation. The district court did not reach the merits of this claim, however, because it held that IIRIRA had stripped it of jurisdiction on all matters related to removal proceedings. This Court reversed,

13

holding that for purposes of determining the applicability of the 1996 amendments to the INA, removal proceedings against an alien have begun when the INS has served him with an order to show cause and has lodged a warrant of detainer against him. *Alanis-Bustamante*, 201 F.3d at 1304. This Court reasoned that, although an OSC – the pre-1996 amendments charging document – was never filed in the immigration court, Bustamante still received the OSC and a detainer was lodged against him prior to the enactment of the 1996 amendments. This Court reasoned that the proceedings "commenced" because Bustamante was "subject to the authority of the INS and to possible removal." *Id.* at 1309; *see also Wallace v. Reno*, 194 F.3d 279, 287 (1st Cir. 1999) (holding that service of OSC alone is adequate to effectively commence INS deportation proceedings). This Court noted that "as of June 28, 1995, Bustamante was clearly subject to the authority of the INS, was unlikely to be released without more being done, and faced eventual removal proceedings." *Alanis-Bustamante*, 201 F.3d at 1310. This Court further explained, "Bustamante was eligible for consideration of an INA § 212(c) discretionary waiver, and he continued to be eligible until April 24, 1996, the effective date of AEDPA – which came almost 10 months after the INS served the order." *Id.*

Here, the INS sent an OSC to the federal correctional institution housing Lyn Quee in 1991, putting Lyn Quee on notice of deportation proceedings and asserting

14

its jurisdiction over her. Like *Alanis-Bustamante*, the INS failed to file an OSC with the immigration court. But unlike *Alanis-Bustamante*, the INS never lodged a detainer against Lyn Quee upon her release from the federal correctional institution. This is understandable. The January 25, 1991 letter to the warden of the correctional institution housing Lyn Quee suggested that the INS never intended to lodge a detainer against Lyn Quee. The INS therefore did everything it had planned to assert jurisdiction and commence proceedings over Lyn Quee.

Because the INS issued the OSC to Lyn Quee and it never intended to lodge a warrant of detainer against Lyn Quee, we hold, in accord with *Alanis-Bustamante*, that she was "subject to the authority of the INS and a possible" removal from the country in 1991, and, as such, the pre-1996 amended INA applies. She was thus impermissibly denied the opportunity to apply for § 212(c) or § 212(h) relief under the pre-1996 amendments by the IJ. *cf. St. Cyr*, 533 U.S. at 326 (holding that § 212(c) relief remained available for aliens whose deportation or removal commenced *after* the enactment of the new INA but who pled guilty to an aggravated felony prior to the new Act); *but see Morales-Ramirez v. Reno*, 209 F.3d 977, 983 (7th Cir. 2000) (rejecting argument that the INS's failure to commence proceedings prior to enactment of the new Act "cost him the opportunity to apply for discretionary waiver" because proceedings did not commence until the INS filed the appropriate

charging document with the immigration court).

Because Lyn Quee's counterfeiting conviction and deportation proceedings were effectively commenced before the new INA, the old INA applies. Accordingly, we grant Lyn Quee's petition and vacate the IJ's decision and the subsequent BIA's affirmance. On remand, we direct the IJ to apply the immigration law in effect in 1991, upon issuance of the 1991 OSC. That is, whatever remedies or administrative applications that would have been available to Lyn Quee upon issuance of the 1991 OSC, including § 212(c) and § 212(h) discretionary relief, must be made available to Lyn Quee at those proceedings. Having granted relief on this ground, we need not consider the remaining constitutional issues presented.

**PETITION GRANTED; REMANDED FOR FURTHER CONSIDERATION.**