[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13861

_____

Agency No. A42-086-274

JOSE ERASMO DE LA ROSA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 20, 2009)

Before DUBINA, Chief Judge, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

This case presents us with an issue of first impression in our circuit.  Jose

Erasmo De la Rosa ("De la Rosa") petitions for review of the Board of

Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") determination that he was statutorily ineligible for a waiver of his deportation charge. He contends that his conviction of the aggravated felony of sexual abuse of a minor qualifies him to apply for a waiver of deportation pursuant to the former Immigration and Nationality Act ("INA") § 212(c), 8 U.S.C. § 1182(c) (repealed 1996) ("§ 212(c) waiver"). We disagree and AFFIRM.

## I. BACKGROUND[1]

In June 2004, De la Rosa was issued a Notice to Appear ("NTA"). The NTA alleged that De la Rosa, although having been legally admitted to the United States, was deportable[2] because (1) he was from the Dominican Republic and was

---

[1] We conclude that we have jurisdiction to entertain De la Rosa's appeal because, although he is a convicted felon, his claims "are constitutional and legal in nature." Alexandre v. U.S. Att'y Gen., 452 F.3d 1204, 1205 (per curiam) (citing 8 U.S.C. § 1252(a)(2)(C),(D)).

[2] The respondent provides a useful tutorial on terminology, which we recite in full:

Prior to the 1996 amendments to the INA, aliens who were ineligible to be admitted to the United States were referred to as "excludable" while aliens who had gained admission but were no longer eligible to remain in the United States were referred to as "deportable." See United States v. Lopez-Gonzalez, 183 F.3d 933, 934-35 n.4 (9th Cir. 1999). The INA also provided for separate types of immigration proceedings, depending on whether an alien was excludable or deportable. Id.

Under current nomenclature, aliens previously referred to as "excludable" are now referred to as "inadmissible." Id.; INA § 212, 8 U.S.C. § 1182. Moreover, the separate exclusion and deportation proceedings have now been consolidated into "removal proceedings." Id.; INA § 240, 8 U.S.C. § 1229a. . . . [T]here is no significant difference between the terms "excludable" and "inadmissible." Nor is there any significant differen[ce] between "removal" proceedings and "exclusion" or "deportation" proceedings.

Respondent's Brief at 9 n.7. We use these terms interchangeably throughout our opinion.

2

not a citizen or a national of the United States; (2) he was admitted to the United States in March 1989 as an immigrant; and (3) in 1995, he was convicted in a Florida court of committing a lewd act upon a child under the age of sixteen in violation of Florida Statute § 800.04(3). The NTA charged that De la Rosa was subject to deportation from the United States pursuant to INA §§ 237(a)(2)(A)(iii)[3] and 237(a)(2)(E)(i) because he had been convicted both of an aggravated felony as defined in INA § 101(a)(43)(A) – a law relating to murder, rape, or sexual abuse of a minor – and a crime of domestic violence, i.e., child abuse. The record indicates that De la Rosa pled nolo contendere to his aggravated felony charge.

De la Rosa admitted to the allegations in the NTA and conceded that he was deportable but sought relief in the form of a § 212(c) waiver. The government moved to pretermit his application for a § 212(c) waiver and maintained that De la Rosa's aggravated felony conviction rendered him ineligible for § 212(c) relief in accordance with the BIA's decision in In re Blake, 23 I. & N. Dec. 722 (BIA 2005). The IJ agreed, pretermitted De la Rosa's application for § 212(c) relief, and ordered him removed from the United States.

De la Rosa appealed to the BIA and claimed, inter alia, that his aggravated felony conviction constituted a "crime involving moral turpitude" as contemplated

---

[3] Under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

3

by INA § 212(a)(2), thus allowing him to apply for the § 212(c) waiver. Administrative Record ("AR") at 11-13. The BIA disagreed, dismissed the appeal, and found that Blake precluded De la Rosa from obtaining a § 212(c) waiver. The BIA reasoned that "[a]s the aggravated felony ground of removal applicable in this case . . . has no statutory counterpart in the grounds of inadmissibility under section 212(a) of the Act, the aggravated felony charge cannot be waived as a ground of deportability under former section 212(c)." Id. at 2.

Although the question presented in this case concerns De la Rosa's eligibility for a § 212(c) waiver, our full consideration of that issue demands a close analysis of both the history of INA § 212(c) and how that provision has been interpreted by our sister circuits. Accordingly, we indulge in a brief survey of the legal landscape in this area.

A. History of INA § 212(c), 8 U.S.C. § 1182(c)

INA § 212(c) concerns only persons in exclusion proceedings. The statutory language in INA § 212(a) lists classes of excludable aliens who are ineligible for admission to the United States.[4] INA § 212(a); 8 U.S.C. § 1182(a). INA § 212(c), however, vests the Attorney General with the discretion to waive exclusion for "[a]liens lawfully admitted for permanent residence who temporarily proceeded

_____

[4] One of these excludable classes includes aliens convicted of "a crime involving moral turpitude." INA § 212(a)(2)(A)(i)(I); 8 U.S.C. § 1182(a)(2)(A)(i)(I).

4

abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years."[5]  8 U.S.C. § 1182(c) (repealed 1996).  Even though INA § 212(c) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),[6] relief remains available to aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."  INS v. St. Cyr, 533 U.S. 289, 326, 121 S. Ct. 2271, 2293 (2001); see also Alexandre, 452 F.3d at 1207 (stating that those who had pled nolo contendere prior to April 1997 could seek § 212(c) relief pursuant to 8 C.F.R. § 1003.44).  Because De la Rosa pled nolo contendere to the crime rendering him deportable in 1995, he was eligible to apply for § 212(c) relief.

As we have noted, on its face § 212(c) applies only to exclusion proceedings.  That said, the Department of Homeland Security (formerly the

---

[5] We note that the Attorney General is accorded similar discretion to suspend deportation of a person if that person meets a ten-year residence requirement, possesses good moral character, and would be subject to exceptional and extremely unusual hardship if deported.  INA § 244; 8 U.S.C. § 1254(a)(2) (repealed 1996).

[6] Congress cut back on the availability of § 212(c) relief prior to its eventual repeal by the IIRIRA.  In the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5052, Congress limited § 212(c) relief to aliens who had served fewer than five years in prison.  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), then made § 212(c) relief unavailable to aliens convicted of aggravated felonies and other specified crimes.  See AEDPA § 440(d).

Immigration and Naturalization Service ("INS")) has, for several decades, permitted aliens subject to deportation to seek § 212(c) relief <u>nunc</u> <u>pro</u> <u>tunc</u>.[7] The rationale for the expansion was that if the INS allowed a resident alien to reenter the country even though he was excludable and then later sought to deport him, the alien should not be put in a worse position than if he had been excluded in the first instance. See <u>Matter of G-A-</u>, 7 I. & N. Dec. 274, 275-76 (BIA 1956). In a previous recitation of § 212(c)'s tortuous history, we explained how this extension produced inequities in its application. See <u>Farquharson v. U.S. Att'y Gen.</u>, 246 F.3d 1317, 1323 (11th Cir. 2001). "While one resident alien who became deportable and then voluntarily left the country became eligible for waiver upon reentry, another alien who was deportable for the same reason but never left the country had no recourse." <u>Id.</u>

In <u>Francis v. INS</u>, 532 F.2d 268, 272 (2d Cir. 1976), the Second Circuit addressed this distinction and concluded that it was "not rationally related to any legitimate purpose of the statute." <u>Id.</u> Instead of striking the statute, however, the Second Circuit elected to extend § 212(c) relief to deportable aliens regardless of whether they had left the United States after committing the act rendering them deportable. See <u>id.</u> at 273. The BIA quickly adopted the reasoning of <u>Francis</u> and

---

[7] "Having retroactive legal effect through a court's inherent power." BLACK'S LAW DICTIONARY 1097 (7th ed. 1999).

6

likewise extended § 212(c) relief to deportable aliens. See Matter of Silva, 16 I. &

N. Dec. 26, 30 (BIA 1976).

The BIA later qualified the extension in Matter of Wadud, 19 I. & N. Dec.

182 (BIA 1984). In Wadud, the BIA settled upon the comparable grounds test as a

means of determining whether a deportee and an excludee were similarly situated.

Under the test, eligibility for § 212(c) relief turned on whether the "ground of

deportation charged is also a ground of inadmissibility." Id. at 184 (citations

omitted). The BIA expressly "decline[d] to expand the scope of section 212(c)

relief in cases where the ground of deportability charged is not also a ground of

inadmissibility." Id. at 185.

In 1991, the BIA softened the comparable grounds test somewhat in Matter

of Meza, 20 I. & N. Dec. 257 (BIA 1991). In Meza, the BIA applied the statutory

framework to an alien deportable for an aggravated felony conviction. Although

no ground of exclusion expressly references "aggravated felonies," the BIA

nonetheless concluded that " a waiver under section 212(c) is not unavailable to an

alien convicted of an aggravated felony simply because there is no ground of

exclusion [in § 212(a)] which recites the words, 'convicted of an aggravated

felony.'" Id. at 259. Instead, the BIA looked to whether the "specific category of

aggravated felony at issue" had a comparable ground of inadmissibility in § 212(a).

Id. The BIA ultimately determined that an alien deportable for an aggravated

7

felony of "illicit trafficking in any controlled substance," as defined in INA

§ 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), was eligible for a § 212(c) waiver

because the category of aggravated felony had a statutory counterpart of

inadmissibility in INA § 212(a)(23), 8 U.S.C. § 1182(a)(23).[8]  Id.

The comparable grounds test gathered ascendent strength in Matter of

Montenegro, 20 I. & N. Dec. 603 (BIA 1992), and Matter of Esposito, 21 I. & N.

Dec. 1 (BIA 1995), both of which also effectively worked to isolate Meza.  In

Montenegro, the respondent was found deportable based on his conviction for

assault with a firearm.  See Montenegro, 20 I. & N. Dec. at 605.  The respondent

argued eligibility for § 212(c) relief under Meza because his assault conviction

constituted a crime of moral turpitude – a comparable ground of exclusion for

purposes of § 212(c) eligibility.  See id.  The BIA disagreed and distinguished

Meza, limiting it to "the unique situation created by the language and legislative

history of an amendment to section 212(c) by [the Immigration Act of 1990],

which indicated that some aggravated felons are eligible for a section 212(c)

waiver in deportation proceedings even though there is no single comparable

ground of exclusion based on conviction of an aggravated felony."  Id.

---

[8] In 1990, INA § 212(a)(23), 8 U.S.C. § 1182(a)(23) was revised and redesignated at INA
§ 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II).  See Meza, 20 I. & N. Dec. at 260 n.5.

Likewise, in Esposito, the BIA again rejected the respondent's argument that his ineligibility for § 212(c) relief due to a lack of a comparable exclusion ground was cured because his offense supported some ground of excludability. See Esposito, 21 I. & N. Dec. at 18-20. As stated by the BIA, "[w]hile the respondent could be deemed inadmissible within the meaning of section 212(a)(10) of the Act based in part on his firearms violation, this does not make him eligible for section 212(c) relief. [His] firearms conviction standing alone supports a charge of deportation under section 241(a)(14), [he] has in fact been found deportable based on this charge, and section 212(c) cannot waive a charge of deportability under section 241(a)(14) because there is no counterpart among the grounds of inadmissibility in section 212(a)." Id. at 20 (citation and alterations omitted). As in Montenegro, the BIA also stressed the limited reach of its decision in Meza. See id. at 21 ("Meza . . . is limited to the question of eligibility for section 212(c) relief in the case of a conviction for a drug-trafficking aggravated felony and is based on the specific amendment to section 212(c) regarding aggravated felonies.").

In the period between Montenegro and Esposito, the Second Circuit decided Bedoya-Valencia v. INS, 6 F.3d 891 (2d Cir. 1993). In Bedoya-Valencia, the court concluded that because entry without inspection – the charged grounds of deportation at issue – logically cannot have an analogue in the exclusion grounds, "coherence and consistency" dictated providing § 212(c) relief to aliens whose

9

deportable offense was entry without inspection.  Id. at 897.  In extending the

Francis rule, the court unambiguously articulated its view of the judicial function

in this area:

> Absent any Congressional indication to the contrary, we believe that coherence and consistency are promoted by allowing the exercise of § 1182(c) [§ 212(c)] discretion with respect to the deportation ground of entry without inspection.  Francis effected a significant alteration of the legal framework in this area, and in the absence of any Congressional revisitation of that framework in the aftermath of Francis, courts must cope with the interstitial issue posed by grounds of deportation that have no counterparts among the statutory grounds for exclusion.
> . . . .
>
> We recognize, of course, as we did in Francis, the paramount authority of the executive and legislative branches of our national government with respect to immigration matters, and the correspondingly limited role of the judiciary.  We also recognize, however, that federal courts can play an important role in interstitial implementation of a legislative design, especially when that design has already been altered by a constitutionally based court decision.

Id. at 897-88 (citations omitted).

Bedoya-Valencia is particularly important because we expressly rejected its

reasoning four months later in Rodriguez-Padron v. INS, 13 F.3d 1455, 1460 (11th

Cir. 1994).  In Rodriguez-Padron, the petitioners were subject to deportation based

on their convictions for firearms violations for which there was no analogous

ground for exclusion.  See id. at 1458.  The petitioners argued that they should be

allowed to seek the § 212(c) waiver and relied, in part, on Bedoya-Valencia.  See

10

id. at 1458-59. In rejecting this reliance on the Second Circuit's rationale, we observed that in Bedoya-Valencia, "[t]he Second Circuit (unlike the Attorney General in Hernandez-Casillas[9] and at least two other circuits) was untroubled by the lack of a basis for this extension [of the Francis rule] in the statutory text." Id. at 1460. We added that "[i]n this context, we believe that a statute should be stretched only as far as necessary to prevent unconstitutionality." Id. We also noted that Congress could have specified firearms violations as grounds for exclusion but had elected not to do so. Finally, and perhaps most significantly, we accorded Chevron deference to the Attorney General's holding in Hernandez-Casillas – namely, that the "Section 212(c) waiver is available in the deportation context only to the extent that the grounds of deportation are analogous to one of the grounds for exclusion." Id. at 1460-61; see also Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S. Ct. 2778, 2781-82 (1984).

We confirmed our determination to guard against further judicial extension of § 212(c) relief in Farquharson. See 246 F.3d at 1325. In that case, we upheld the comparable grounds approach in response to an equal protection challenge by a petitioner who was found deportable for entry without inspection. See id. at 1318.

---

[9] See Matter of Hernandez-Casillas, 20 I. & N. Dec. 262, 280-93 (BIA 1991), aff'd mem., 983 F.2d 231 (5th Cir. 1993). In Hernandez-Casillas, the Attorney General reversed a BIA decision making § 212(c) relief available to aliens deportable on the ground of entry without inspection, concluding, inter alia, that "there [was] no constitutional justification for [such] a further departure from the statutory text." Id. at 293.

We concluded, in part, that "§ 212(c) has already been stretched beyond its language in response to equal protection concerns, and further judicial redrafting would serve only to pull the statute further from its moorings in the legislative will." Id. at 1325 (quotation marks and citation omitted).

In 2004, 8 C.F.R. § 1212.3(f)(5) codified the case law in the area and provided that an application for relief under § 212(c) must be denied if "[t]he alien is deportable under section 241 of the Act or removable under section 237 of the Act on a ground which does not have a statutory counterpart in section 212 of the Act." Id. And so the statutory counterpart test was born. The BIA's application of this framework in early 2005 proved to be a watershed moment in § 212(c) jurisprudence and is of particular significance in our consideration of the case before us. See In re Blake, 23 I. & N. Dec. 722 (BIA 2005).

In In re Blake, the BIA applied the statutory counterpart framework and concluded that an alien deportable based on an aggravated felony conviction for sexual abuse of a minor was ineligible for a § 212(c) waiver. See id. at 726-29. The BIA found that the respondent was ineligible for § 212(c) relief because "the aggravated felony offense of sexual abuse of a minor has no statutory counterpart in the section 212(a) grounds of inadmissibility." Id. at 723. The BIA expressly rejected the respondent's contention that § 212(a)(2)(A)(i)(I), the provision rendering aliens inadmissible who have been convicted of a crime of moral

12

turpitude, was comparable to his aggravated felony charge. See id. at 727. The

BIA distinguished its decision in Meza, which the respondent cited in support of

his argument, explaining that "[t]he instant case differs from Matter of Meza in that

the moral turpitude ground of exclusion addresses a distinctly different and much

broader category of offenses than the aggravated felony sexual abuse of a minor

charge." Id. at 728. The BIA further articulated its statutory counterpart approach

as follows:

> [W]hether a ground of deportation or removal has a statutory
> counterpart in the provisions for exclusion or inadmissibility turns on
> whether Congress has employed similar language to describe
> substantially equivalent categories of offenses. Although many
> firearms offenses may also be crimes of moral turpitude, the category
> of firearms offenses is not a statutory counterpart to crimes of moral
> turpitude. Similarly, although there may be considerable overlap
> between offenses categorized as sexual abuse of a minor and those
> considered crimes of moral turpitude, these two categories of offenses
> are not statutory counterparts.
>               . . . .
>
>       The coverage of the offenses described need not be a perfect
> match in order to be statutory counterparts under the regulation so
> long as the ground of inadmissibility addresses essentially the same
> category of offenses under which the removal charge is based. In
> Matter of Meza, . . . for example, the language used in describing the
> drug-related aggravated felony provision covered substantially the
> same category of drug-related offenses addressed in the exclusion
> ground. Under the regulation and our precedent decisions, however,
> the test for comparability is not met merely by showing that some or
> many of the offenses included in the charged category could also be
> crimes involving moral turpitude.

Id. at 728-29 (quotation marks omitted).

13

B.  Section 212(c) in the Wake of In re Blake

The BIA's decision in In re Blake was not uniformly recognized as the last word on the issue.  Although it largely crystallized the grounds-based or categorical approach of the statutory counterpart test ("categorical approach"), the Second Circuit rejected its reasoning on appeal in Blake v. Carbone, 489 F.3d 88, 101-04 (2d Cir. 2007), and fashioned an offense-based approach as a counterpoint to the BIA's approach.  A recent opinion by the Ninth Circuit has introduced yet another formula for handling § 212(c) waivers.  See Abebe v. Mukasey, 554 F.3d 1203 (9th Cir. 2009) (en banc).  Having already considered the categorical approach in some detail, we now examine the alternative views advanced by the Second and Ninth Circuits respectively.

1.  Blake v. Carbone – An Offense-Based Approach

In Blake, the Second Circuit declined to accord deference to the BIA's interpretation of the statutory counterpart rule, rejected the categorical approach as violative of Francis, and set out its own offense-based approach for determining a deportee's eligibility for § 212(c) relief.  After reciting Chevron's familiar mandate, the court concluded that because the statutory counterpart rule "is a creature of constitutional avoidance, arising from the ramifications of a prior constitutional decision of this court, rather than the original statute concerning whose interpretation the Attorney General has conceded expertise," deferring to

14

the BIA's "determination of equal protection" would constitute, in part, an abdication of its "responsibilit[y] to uphold the Constitution." Blake, 489 F.3d at 100 (quotation marks and citation omitted).

In rejecting the categorical approach, the Second Circuit observed that the BIA's emphasis on the need for substantially similar language in grounds of deportation and grounds of exclusion was "strange" because Congress "never contemplated that its grounds of deportation would have any connection with the grounds of exclusion." Id. at 102. As asserted by the court, because

> the history of § 212(c) relief for deportees began not with an expression of congressional intent but rather with Francis[,] . . . Congress did not employ similar terms when writing the grounds of exclusion and grounds of deportation because it had no need to, making it an exercise in futility to search for similar language to gauge whether equal protection is being afforded.

Id. (citation omitted).

The court also took issue with the BIA's "incidental overlap" language[10] and concluded that the BIA's requirement that "all or substantially all of the offenses

---

[10] The BIA further clarified its categorical approach in In re Brieva-Perez, 23 I. & N. Dec. 766, 773 (BIA 2005), aff'd sub. nom. Brieva-Perez v. Gonzales, 482 F.3d 356 (5th Cir. 2007). In Brieva, the respondent was found deportable based on his conviction for unauthorized use of a motor vehicle, an aggravated felony crime of violence. See id. at 772. In applying the categorical approach, the BIA determined that "[a]lthough there need not be perfect symmetry in order to find that a ground of removal has a statutory counterpart in section 212(a), there must be a closer match than that exhibited by the incidental overlap between section 101(a)(43)(F) (crime of violence) and section 212(a)(2)(A)(i)(I) (crime of moral turpitude)." Id. at 773.

under a particular ground of deportation must also fall under the counterpart ground of exclusion" was not supported by Francis:

> The touchstone in Francis was the "irrelevant and fortuitous" circumstance of traveling abroad recently; the decision did not consider whether equal protection requires that all or even most offenses falling under a particular ground of deportation must also fall under the counterpart ground of exclusion. In short, eligibility for relief in Francis turned on whether the lawful permanent resident's offense could trigger § 212(c) were he in exclusion proceedings, not how his offense was categorized as a ground of deportation.

Id. (citation omitted).

The Second Circuit concluded its opinion in Blake by staking out the contours of its offense-based approach to the statutory counterpart test: "[P]etitioners' eligibility for a § 212(c) waiver must turn on their particular criminal offenses. If the offense that renders a lawful permanent resident deportable would render a similarly situated lawful permanent resident excludable, the deportable lawful permanent resident is eligible for a waiver of deportation." Id. at 103.

2. Ninth Circuit's Repudiation of the Francis Rule

The Ninth Circuit has taken a different tact altogether. In Abebe, the court overruled its precedent that both had adopted Francis and endorsed the statutory counterpart test. See Abebe, 554 F.3d at 1207; see also Tapia-Acuna v. INS, 640 F.2d 223, 225 (9th Cir. 1981). In so doing, the court reassessed the "complex

16

legislative scheme" concerning § 212(c) waivers and afforded fresh consideration to "whether [it could] conceive of a rational reason Congress may have had in adopting it." Abebe, 554 F.3d at 1206. The Abebe court found that it could and explained as follows:

> Congress could have limited section 212(c) relief to aliens seeking to enter the country from abroad in order to create an incentive for deportable aliens to leave the country. A deportable alien who wishes to obtain section 212(c) relief will know that he can't obtain such relief so long as he remains in the United States; if he departs the United States, however, he could become eligible for such relief. By encouraging such self-deportation, the government could save resources it would otherwise devote to arresting and deporting these aliens. Saving scarce resources that would otherwise be paid for by taxpayers is certainly a legitimate congressional objective.

Id. (quotation marks, citations and alterations omitted). By repudiating Francis and eliminating the statutory counterpart rule altogether, the Ninth Circuit has forged its own path and neatly avoids any consideration of the relative merits of the Second Circuit's offense-based approach versus the categorical approach followed by the majority of the other circuits who have entertained the issue.

As it stands, there exists a three-way circuit split on the question of whether certain deportees who have not temporarily left the country are eligible for § 212(c) relief. The BIA and the majority of our sister circuits have adopted the Francis rule and have applied the categorical approach when dealing with the

17

resulting statutory counterpart test.[11]  Under the categorical approach, the central

inquiry is whether a petitioner's ground of deportation has a comparable ground of

exclusion under § 212(a).  This approach focuses on the categorical similarity of

the corresponding grounds and avoids any examination of a petitioner's underlying

offense and whether it could render him excludable under § 212(a).

The Second Circuit also has adopted the Francis rule but employs an

offense-based approach when considering the resultant statutory counterpart test.

Under this approach, the inquiry focuses on a petitioner's underlying offense.  If

the underlying offense responsible for a petitioner's deportation could render him

excludable under § 212(a), then he is eligible for § 212(c) relief.

Finally, the Ninth Circuit has abandoned the Francis rule and its

accompanying statutory counterpart test altogether.  In the wake of Abebe,

deportable aliens in the Ninth Circuit who have not left the country are not eligible

for § 212(c) relief.  With this menu of options in mind, we now consider the merits

of De la Rosa's petition for review.

---

[11] See, e.g., Gonzalez-Mesias v. Mukasey, 529 F.3d 62, 64-65 (1st Cir. 2008); Caroleo v. Gonzales, 476 F.3d 158, 162-63 (3d Cir. 2007); Vo v. Gonzales, 482 F.3d 363, 372 (5th Cir. 2007); Koussan v. Holder, 556 F.3d 403, 412-13 (6th Cir. 2009); Valere v. Gonzales, 473 F.3d 757, 762 (7th Cir. 2007); Soriano v. Gonzales, 489 F.3d 909 (8th Cir. 2006) (per curiam).

## II. DISCUSSION

We review the BIA's legal determinations <u>de novo</u>. <u>See</u> <u>Castillo-Arias v. U.S. Att'y Gen.</u>, 446 F.3d 1190, 1195 (11th Cir. 2006). However, our review of the BIA's interpretation of the statutes it administers "is informed by the principle of deference articulated in <u>Chevron</u>."[12] <u>Id.</u> (quotation marks and citation omitted).

De la Rosa advances several arguments in support of his central contention that the BIA erred in finding him ineligible for § 212(c) relief. First, he argues that the BIA's decision in <u>In re Blake</u> contradicts BIA and federal circuit precedent on the issue. De la Rosa claims that such precedent provides that § 212(c) relief is available to waive non-drug aggravated felony convictions that are also crimes involving moral turpitude. Our view of the applicable BIA precedent is at odds with De la Rosa's interpretation. As early as 1984, the BIA rejected the argument that a respondent could obtain a § 212(c) waiver if his underlying offense constituted a crime of moral turpitude even if his charged ground of deportability lacked a statutory counterpart in the grounds of inadmissibility. <u>See</u> <u>Wadud</u>, 19 I. & N. Dec. at 185-86. When addressing the statutory counterpart test, the BIA consistently has followed a categorical approach that focuses on the charged

---

[12] We have held that <u>Chevron</u> deference is not appropriate in cases in which a single member of the BIA issues a non-precedential decision that does not rely on existing BIA or federal court precedent. <u>See</u> <u>Quinchia v. U.S. Att'y Gen.</u>, 552 F.3d 1255, 1258 (11th Cir. 2008). Whereas the case before us was decided by a single member of the BIA, it is distinguishable from <u>Quinchia</u> because it relied on the BIA's precedent in Blake. <u>See</u> <u>id.</u>

19

ground of deportability rather than the underlying offense. See Esposito, 21 I. &

N. Dec. at 20; Montenegro, 20 I. & N. Dec. at 605; Meza, 20 I. & N. Dec. at 259;

Wadud, 19 I. & N. Dec. at 185-86. Consequently, In re Blake's focus on the

charged grounds of deportation instead of the underlying offense did not represent

a departure from prior BIA practice. See In re Blake, 23 I. & N. Dec. at 729. De la

Rosa's reliance on unpublished BIA decisions is misplaced as the BIA accords no

precedential value to its unreported decisions. See Matter of Zangwill, 18 I. & N.

Dec. 22, 27 (BIA 1981), overruled on other grounds, Matter of Ozkok, 19 I. & N.

Dec. 546 (BIA 1988).

De la Rosa also asserts that In re Blake is inconsistent with the Attorney

General's decision in Hernandez-Casillas. See Hernandez-Casillas, 20 I. & N.

Dec. at 280-93. Seizing on the Attorney General's comments in a footnote[13], De la

Rosa disregards the body of the opinion which unambiguously supports the

categorical approach and expressly states that equal protection does not require that

discretionary relief be made available "where the ground for deportation could not

be waived if asserted in an exclusion case." Id. at 288.

De la Rosa again attempts to glean support for his position with a curious

construction of § 212(c)'s plain language. He contends that § 212(c) provides that

---

[13] See id. at 282 n.4 (pointing out that two grounds of deportation – illegal entry and conviction of illegal possession of certain firearms – have no analogue in the grounds for exclusion).

20

an alien convicted of an aggravated felony with a term of imprisonment of less than five years could qualify for § 212(c) relief as long as his conviction caused inadmissibility. So far, so good. But De la Rosa then asserts that this language somehow implies that any aggravated felon with a term of imprisonment of less than five years qualifies for § 212(c) relief. We disagree and point out that the language at issue merely excludes a class of aggravated felons from eligibility for § 212(c) relief. See INA § 212(c); 8 U.S.C. § 1182(c) (providing that "[t]he first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years"). In any event, De la Rosa appears to agree that a deportee's eligibility for § 212(c) relief is predicated on whether, as he styles it, "the [deportee's] conviction caused inadmissibility." Petitioner's Brief at 4. In our view, this admission marks De la Rosa's argument as superfluous and returns us to where we started.

As previously noted, De la Rosa maintains that federal courts also have extended § 212(c) relief to deportees convicted of aggravated felonies unrelated to drugs. He cites three cases from our circuit in support of this argument – Adefemi v. Ashcroft, 358 F.3d 828 (11th Cir. 2004); Cunningham v. U.S. Att'y Gen., 335 F.3d 1262 (11th Cir. 2003) (per curiam); and Ramsey v. INS, 55 F.3d 580 (11th Cir. 1995) (per curiam). We conclude that these cases are inapposite. We vacated

21

the Adefemi opinion cited by De la Rosa, reheard the case en banc, and ultimately determined that the petitioner was not eligible for § 212(c) relief. See Adefemi v. Ashcroft, 386 F.3d 1022, 1031 (11th Cir. 2004) (en banc). In Cunningham, the petitioner was denied the opportunity to apply for § 212(c) relief because the IJ applied the wrong law. See Cunningham, 335 F.3d at 1264, 1268. We determined that the petitioner was entitled to apply for relief and remanded the case so that the IJ could apply the appropriate law. See id. at 1268. Finally, in Ramsey, we denied the petitioner's application for § 212(c) relief on the merits. See Ramsey, 55 F.3d at 582-83. De la Rosa transforms our lack of analysis regarding Ramsey's statutory eligibility for § 212(c) relief into a holding that deportees convicted of aggravated felonies that are crimes of moral turpitude are statutorily eligible for § 212(c) relief. We reject De la Rosa's expansive reading of our holding and conclude that Ramsey lends no support to De la Rosa's argument.

Although we have dispensed with the bulk of De la Rosa's explicit challenges, we now circle back and address the implicit argument underpinning his position. De la Rosa's petition for review expressly recites neither equal protection nor the Second Circuit's decision in Blake as a basis for appeal. That said, his argument can be fairly read as a challenge to the BIA's categorical approach to the statutory counterpart test. He argues that he is eligible for § 212(c) relief because his conviction of the aggravated felony of sexual abuse could qualify as a crime of

22

moral turpitude, a comparable ground of inadmissibility under § 212(a). In urging us to look to the conduct or offense underlying his conviction, De la Rosa effectively is asking us to adopt the Second Circuit's offense-based approach to the statutory counterpart test. Because Blake's holding rests on a more expansive view of equal protection than we find palatable, we must decline. Instead, we join the majority of our sister circuits who have considered the issue and adopt the categorical approach to the statutory counterpart test.[14]

Our decision is supported by the both our precedent and the considered reasoning advanced by our sister circuits. We recognize that clarity in this area has proven an elusive goal, given the complexity created by overlapping administrative decisions, judicial opinions and Congressional actions. We acknowledge that our own reasoning on this issue has evolved over time, in fits and starts, and has not lent itself to a bright-line rule. That, in part, is why we have labored to trace the history of the law in this area, with all its attendant twists and turns. Our study is directed at discerning the trajectory of the law. In so doing, we must guard against the temptation to cherry-pick those portions along the continuum that we might

---

[14] Our long-standing endorsement of Francis precludes us from considering the route taken by the Ninth Circuit in Abebe. See, e.g., Chuang v. U.S. Att'y Gen., 382 F.3d 1299, 1304 (11th Cir. 2004) (per curiam); Farquharson, 246 F.3d at 1324-25; Yeung v. INS, 76 F.3d 337, 341 (11th Cir. 1995); see also Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) (discussing our prior panel precedent rule).

23

find appealing or convenient and remind ourselves that we are bound by the canons of deference and judicial restraint to respect the law's contemporary terminus.

In our view, we parted ways with the Second Circuit in Rodriguez-Padron. See 13 F.3d at 1460. In that case, we rejected any additional extension of the Francis rule – itself a judicially created extension on equal protection grounds. We reiterated our aversion to "stretch[ing] [§ 212(c)] beyond its language" again in Farquharson, and observed that "further judicial redrafting would serve only to pull the statute further from its moorings in the legislative will." 246 F.3d at 1325 (quotation marks and citation omitted). Although we consistently signaled our view that any additional extension of § 212(c) beyond Francis is "not constitutionally required," we stress that we have in no way abandoned our adoption of the equal protection rationale of Francis itself. Id. Indeed, we have affirmed our commitment to the Francis rule on several occasions. See, e.g., Chuang, 382 F.3d at 1304; Farquharson, 246 F.3d at 1324-25; Yeung, 76 F.3d at 340.

We read Francis as extending equal protection to two classes of similarly situated deportable aliens – one class in which an alien is convicted of a deportable offense and is placed in deportation proceedings and another class in which an alien is convicted of a deportable offense, travels abroad, returns to the United States, and then is placed in deportation proceedings. The Second Circuit's

24

offense-based approach to the statutory counterpart test, however, departs from

Francis in several respects. Many of our sister circuits have considered this issue

quite closely and we find much to admire in their logic.

The Seventh Circuit's observation that "not every act that renders someone

deportable makes him excludable, and vice versa" largely captures the thrust of the

first counter-argument to Blake's rationale. Zamora-Mallari v. Mukasey, 514 F.3d

679, 683 (7th Cir. 2008). Simply put, a deportable alien usually is not similarly

situated to an excludable alien. This is because Congress delineated different

grounds for deportation and exclusion. If, however, an alien's ground for

deportation has a statutory counterpart in a ground of exclusion, then the two

classes (deportable and excludable aliens) are similarly situated and any distinction

between them would be arbitrary and violate equal protection. This point is

succinctly captured by the Ninth Circuit in the following passage[15]:

> Generally, when courts have found an equal protection
> violation, the excludability and deportation provisions have been
> substantially identical. That way, the only distinction between the two
> classes of persons the statute created was that one class of individuals
> had traveled abroad and returned, and the other had not. It is this
> arbitrary distinction that violates equal protection. In the instant case,
> the provisions are entirely dissimilar, and the distinction between the
> two classes is not arbitrary or unreasonable. For this reason, the

---

[15] We recognize that the Ninth Circuit has departed from its holding in Komarenko. See Abebe v. Mukasey, 554 F.3d 1203 (9th Cir. 2009). Komarenko's reasoning, however, remains persuasive for those circuits who continue to follow the BIA's rationale in In re Blake.

linchpin of the equal protection analysis in this context is that the two provisions be substantially identical.

Komarenko v. INS, 35 F.3d 432, 435 (9th Cir. 1994) (quotation marks and citation omitted), abrogated by Abebe v. Mukasey, 554 F.3d 1203 (9th Cir. 2009).

Having established the statutory counterpart test as the "linchpin" of the equal protection analysis in the area, we next consider the merits of the categorical approach. We find the Third Circuit's reasoning particularly instructive. In Caroleo, 476 F.3d at 160-61, an alien was found deportable for his conviction, among other things, of an aggravated-felony crime of violence – attempted murder. The alien sought a § 212(c) waiver and argued that attempted murder is a crime involving moral turpitude, which is a ground of inadmissibility under § 212(a). See id. at 164. The court rejected the argument and drew a distinction between § 237 of the INA, which lists the grounds upon which the Attorney General may order an alien deported, and the statutory counterpart test under § 212(c). See id. "It is in this context [§ 237] that courts look to an alien's underlying criminal conviction to determine whether if falls within one of § 237's statutory grounds for removal." Id. The court explained the secondary analysis under § 212(c) as follows:

> The statutory counterpart requirement under § 212(c), on the other hand, presents an entirely different question. In an application for § 212(c) relief – i.e. a discretionary waiver of removal, the alien's removability has already been established – i.e., it has already been

26

> determined that the underlying crime for which he has been convicted falls within one of INA § 237's grounds for removal. The relevant statutory counterpart inquiry then looks – not to the underlying criminal conviction – but rather to the <u>statutory ground for removal contained in INA § 237</u> and whether it has a counterpoint in the <u>statutory ground for exclusion provisions of INA § 212(a)</u>. Under this categorical analysis, we compare the removal and exclusion provisions <u>of the INA</u> to determine whether they are substantially equivalent.

<u>Id.</u> (quotation marks omitted). The court concluded that "the underlying crime for which [the petitioner] was convicted plays no role in this inquiry. It is therefore irrelevant that [his] conviction . . . <u>could</u> have subjected him to removal as an alien convicted of a crime of moral turpitude under INA § 237(a)(2)(A)(i)." <u>Id.</u> at 168 (emphasis added). Comparing the underlying criminal offense – instead of the statutory ground of deportation – with the ground of inadmissibility hazards the congruity between an alien in deportation proceedings and an alien in exclusion proceedings. This is so because the underlying offense <u>could</u> be among a wide array of inadmissible offenses, or not. With no congruity established, the aliens in question are not similarly situated, and equal protection is not implicated.

We also are swayed by the Seventh Circuit's observation that "if courts were to look beyond the charged grounds of deportation to the underlying criminal offense to determine whether the criminal offense <u>could</u> have been treated as a crime of moral turpitude, that would greatly expand the role Congress assigned the

27

judiciary in immigration cases." <u>Zamora-Mallari</u>, 514 F.3d at 692 (referencing

<u>Komarenko</u>). This point is underscored in the following passage from <u>Abebe</u>:

> Congress has vested the executive branch with discretion in whether, when, and how to charge an alien with removal. How it exercises that discretion will have a serious impact on the life of a removable alien, whether it means forcible removal from the country or the availability of section 212(c) relief. To hold that the exercise of that discretion is unconstitutional where it is not exercised in the most advantageous way possible for a given alien under the circumstances would open the door to a torrent of claims. An alien is no more entitled to section 212(c) relief when charged with a ground of removal that has no statutory counterpart under the INA's inadmissibility provisions than a defendant is entitled to a sentencing range consistent with the least serious crime with which he could have been charged.

<u>Abebe</u>, 554 F.3d at 1212 (Clifton, J., concurring).

Finally, we reiterate our aversion to the judicial extension of a statute absent sufficient constitutional justification. Extending it once does not empower a court to extend it <u>ad</u> <u>infinitum</u>, without any foundation in the statute or case law. When a rule, born of a series of <u>ad</u> <u>hoc</u> judicial extensions to a statute, no longer bears any passing resemblance to its parent legislation, that rule is a creature of judicial legislation. We decline to breathe further life into such a construct and hew to the maxim that courts are charged with adjudication, not legislation.

De la Rosa was found deportable based upon his conviction of the aggravated felony of sexual abuse of a minor. Employing the categorical approach to the statutory counterpart test, we look to whether the grounds for his deportation

28

have a statutory counterpart to a crime involving moral turpitude under INA § 212(a). The BIA has determined that sexual abuse of a minor does not have a statutory counterpart in the crime of moral turpitude provision in § 212(a). See In re Blake, 23 I. & N. Dec. at 729. Affording due deference to the BIA's interpretation of the INA, we conclude that De la Rosa's implicit equal protection argument fails.

## III. CONCLUSION

De la Rosa petitions for review of the BIA's decision affirming the IJ's determination that he was statutorily ineligible for a waiver of his deportation charge. Applying the categorical approach to the statutory counterpart test, we conclude that De la Rosa's conviction of the aggravated felony of sexual abuse of a minor does not have a statutory counterpart in the grounds of inadmissibility in § 212(a). Accordingly, he is ineligible for § 212(c) relief.

**AFFIRMED.**